# In the United States Court of Federal Claims

No. 15-148C
(E-Filed Under Seal: July 31, 2015)
(Reissued: August 21, 2015)[1]

_____

|  |  |
|---|---|
| CYIOS CORPORATION, | ) |
| | ) |
| | ) Post-Award Bid Protest; Motion to |
| Plaintiff, | ) Dismiss for Lack of Jurisdiction; |
| | ) Standing; Cross-Motions for |
| v. | ) Judgment on the Administrative |
| | ) Record; Technical Evaluations |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

_____

Frank V. Reilly, Fort Lauderdale, Fla., for plaintiff.

Delisa M. Sánchez, Trial Attorney, with whom were Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Robert E. Kirschman, Jr., Director; and Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. Captain Evan Williams, Trial Attorney, U.S. Army Legal Services Agency, Ft. Belvoir, Va., of counsel.

## OPINION AND ORDER

_____

[1] This Opinion was originally filed under seal to protect potentially proprietary or confidential information subject to the Protective Order, at which time the parties were provided an opportunity to request redactions of any protected information. On August 14, 2015, the parties provided their joint proposed redactions. ECF No. 22. The court provided notice of its intent to reject one proposed redaction, ECF No. 23, to which the parties did not object, ECF No. 24. The court otherwise accepts the parties' proposed redactions in their entirety. Redacted text is indicated as follows, xxx, with the redaction approximately equal in length to the text redacted. Redacted numbers, for example dollar amounts or percentages, are indicated as xxx, regardless of the number of digits in the redacted number.

This is a post-award bid protest related to a contract to provide Information Technology (IT) support in the United States Army Senior Leader Development Office (SLD Office). The procuring agency is the United States Army Software Engineering Center Enterprise Solutions Directorate Data Services Division (Government, agency, the Army or defendant), which provides IT services to the SLD Office. CYIOS Corporation is the incumbent contractor, and an unsuccessful offeror (CYIOS or plaintiff). In its bid protest, CYIOS alleges that defendant made a number of errors in evaluating both its proposal and the proposals of other offerors, resulting in a procurement decision that was arbitrary and capricious, and lacked a rational basis. CYIOS seeks a permanent injunction ordering defendant to reevaluate the proposals and to award the contract to it, should it prove to be the successful offeror.

The parties filed cross-motions for judgment upon the administrative record under Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC). In addition, defendant filed a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), alleging that plaintiff lacked standing. All motions have been fully briefed and are ripe for decision. Oral argument was deemed unnecessary by the court.

For the reasons explained below, the court **DENIES** defendant's motion to dismiss for lack of jurisdiction, **GRANTS** defendant's cross-motion for judgment on the administrative record, and **DENIES** plaintiff's motion for judgment on the administrative record.

I.      Background

The Army issued Solicitation No. W15P7T-14-R-E005 on February 11, 2014. Tab 4, AR 61 (Original Solicitation). On February 27, 2014, the Army issued an amended solicitation, Tab 6 at AR 132-84 (Solicitation), in which it revised a number of attachments to the Original Solicitation, including Section L Instructions, Conditions & Notices to Offerors (Tab 6c), Section M Evaluation Factors (Tab 6d), and the Performance Work Statement (PWS) (Tab 6a), id. at AR 133.

The SLD Office is located in the Washington, D.C. area, Tab 6a, AR 139 ¶ 1.0, and "reports to the Chief of Staff, Army for matters relating to the management of Army Senior Officers (Colonels and General Officers)," id. at AR 163. It supports informed decision making by the Secretary of the Army and Chief of Staff, Army by providing them with accurate and timely data. Tab 4, AR 62 ¶ 3.

The purpose of the contract was to support the Software Engineering Center
Enterprise Solutions Directorate in its work performing IT services for the SLD Office.
Tab 6a, AR 139 ¶ 1.0.

> The support required is for continued operations and maintenance of the
> unique applications, databases, and Senior Leader Development
> Management System (SLDMS) used by the Army SLD Office.  It is
> comprised of two applications:  the Colonel Officers Management Office
> (COMO) web application called Development Opportunities Management
> System (the DOM) and the General Officers Management Office (GOMO)
> web application called General Officer Resource Management System
> (GORMS) (also called GOMONet).   The Senior Leader Development
> Management System (SLDMS) is the underlying system of record and each
> of these web applications serv[es] a distinct managed population.

Tab 4, AR 62 ¶ 2.

The SLD Office relies on SLDMS in its role as a "knowledge-centric
organization."  <u>See</u> Tab 6a, AR 139 ¶ 1.1.

> The Army SLD Office uses the SLDMS to assist in the administration of
> promotable lieutenant colonels, colonels, and general officers. . . . The SLD
> Office has several critical applications and databases that aid in the
> processing of personnel data and information not currently provided by
> existing Army systems. . . .

> The contractor shall have access to Armys Personnel systems including the
> Total Army Personnel Management Information System (TOPMIS) II,
> Worldwide Individual Augmentation System (WIAS), and Integrated
> Personnel and Pay System-Army (IPPS-A[2]).

Tab 4, AR 62 ¶ 3 (footnote added).

---

[2]      "INTEGRATED PERSONNEL AND PAY SYSTEM-ARMY (IPPS-A):
Replacement Personnel and Pay system currently under development for use by the Army
and all components (Active and Reserve/National Guard) that will replace existing legacy
systems."  Tab 6a, AR 163.

Both DOM and GORMS are "web accessible data system[s] used in the management of [the officers'] careers, development and assignments," Tab 6a, AR 162, and are used by "SLD staff, promotable lieutenant colonels, colonels, and general officers and public users," id. at AR 148 ¶ 3.3.  The Army expected the contractor to "ensure that these systems and associated technology enable the SLD staff and customers served to conveniently and correctly view, add, change, or delete information."  Id. at AR 140 ¶ 1.2.

The procurement was a 100% small business set-aside competitive acquisition, Tab 4, AR 62 ¶ 1, resulting in a cost plus fixed fee (CPFF) term service contract for one 12-month base period and one 12-month option period, id. at AR 62 ¶ 4.  The evaluation was best value—"best overall . . . proposal that is determined to be the most beneficial to the Government."  Tab 6d, AR 178 ¶ A.  It was a negotiated procurement, Tab 4, AR 61 box 4, subject to FAR pt. 15.

In making its decision, the Army considered three evaluation factors:

1. FACTOR 1 – TECHNICAL/RISK FACTOR: The Technical/Risk factor will include the evaluation of the offeror's response to the proposal requirements identified in the RFP as they relate to the PWS . . . .

2. FACTOR 2 [–] PAST PERFORMANCE:  Each offeror's past performance will be reviewed to determine relevancy and confidence assessment.

3. FACTOR 3 [–] COST/PRICE:  The resulting award will be a Cost Plus Fixed-Fee Term Contract.  Cost realism will be utilized in the evaluation of this cost reimbursable effort.

Tab 6d, AR 178 § M.B.  Further, the Solicitation provided that

[t]he Technical factor is significantly more important than Past Performance. Past Performance is more important than the Cost/Price factor.  All evaluation factors other than Cost/Price, when combined, are significantly more important than the Cost/Price factor.  To receive consideration for award, a rating of no less than "Acceptable" must be achieved for the Technical factor.  Offerors are cautioned that the award may not necessarily be made to the lowest cost offeror.

Id. § M.A.

The Army received fourteen proposals, all of which it evaluated on both Factor 1 (Technical/Risk) and Factor 2 (Past Performance), rating eight proposals as Unacceptable on Factor 1.  Tab 23, AR 1139 ¶¶ 2, 4.  As provided in the Solicitation, the agency did not evaluate those eight proposals on Factor 3 (Cost/Price), nor did it consider them in making its best value decision.  Id. ¶¶ 3-4; Tab 6d, AR 178 § M.A ("To receive consideration for award, a rating of no less than 'Acceptable' must be achieved for the Technical factor.").[3]

On June 4, 2014, the Source Selection Evaluation Board (SSEB) presented the final evaluation results for six offerors to the Source Selection Authority (SSA), Tabs 18, 19 & 21, who made his decision on June 20, 2014, Tab 23, AR 1141 ¶ 7.  The agency awarded the contract to SSB, Inc. (SSB, Inc. or awardee).  Id.

CYIOS filed a post-award protest with the Government Accountability Office (GAO) in October 2014.  See Tab 39.  The GAO denied that protest on January 9, 2015.  Tab 44.

CYIOS filed its complaint in this court on February 18, 2015, in which it asserted that the Army's best value decision was arbitrary and capricious and lacked a rational basis.  Compl. ¶¶ 25, 31, ECF No. 1.  CYIOS seeks an injunction directing the Army to: (1) reevaluate its proposal in accordance with the solicitation's stated criteria; (2) award the contract to CYIOS in the event the Army determines it to be the successful offeror; and (3) stay performance of the contract pending the outcome of this litigation.[4]  Id. ¶ 36.

---

[3]     CYIOS includes all fourteen proposals in its arguments.  See Pl.'s Mot. 21-25 (Factor 1), 35-36 (Factor 2).  During the initial status conference, defendant noted that it was prepared to file the proposals rated Unacceptable, however, this would necessarily increase the size of the administrative record.  Neither party expressed any intention of relying on those proposals, and the court accordingly indicated that defendant need not file them.  Order 2, Feb. 20, 2015, ECF No. 8 (SC Order).  Accordingly, the court considers only CYIOS' arguments about the evaluations of the six proposals the Army included in its best value decision, all of which are in the administrative record.  See Tabs 18, 19 & 21.

[4]     Defendant declined to agree to a voluntary stay of contract performance.  SC Order 2.  Plaintiff filed no motion seeking a temporary injunction on contract performance during the pendency of this protest.

In addition, CYIOS requests its bid preparation and proposal costs, attorneys' fees and expenses, and such other relief as is equitable and just.  Id. at 12.

The court held a telephonic initial status conference on February 20, 2015.  Order 2, Feb. 20, 2015, ECF No. 8 (SC Order), and entered a protective order that same day, ECF No. 7.  In accordance with a schedule agreed to by the parties, defendant filed the Administrative Record (AR) on March 13, 2015.  ECF Nos. 10-12.  Plaintiff filed its motion for judgment on the administrative record on April 9, 2015.  Pl.'s Mot., ECF No. 15.  Defendant filed both a motion to dismiss for lack of subject matter jurisdiction, and a cross-motion for judgment on the administrative record on April 29, 2015.  Def.'s Mot., ECF No. 16.  Plaintiff filed a response and reply on May 14, 2015.  Pl.'s Resp., ECF No. 17.  Defendant filed its reply on June 3, 2015.  Def.'s Reply, ECF No. 18.  The court did not hear oral argument.  Order, ECF No. 19.

All motions are ripe for decision.

II.    Motion to Dismiss for Lack of Jurisdiction

A.    Legal Standard

The Court of Federal Claims has "jurisdiction to render judgment on an action by an interested party objecting to . . . the award of a contract . . . in connection with a procurement." 28 U.S.C. § 1491(b)(1) (2012).  Within the meaning of the Tucker Act, the term "interested party," limits standing to an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract.  Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006).  An offeror has a direct economic interest if it suffered a competitive injury or prejudice.  Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002) (holding that "prejudice (or injury) is a necessary element of standing").

"To establish prejudice, [the protestor] must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process.  In other words, the protestor's chance of securing the award must not have been insubstantial."  Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (citations omitted).

Courts interpreting the substantial chance standard for standing have held that it requires a showing of "likelihood of prevailing on the prospective bid taking the protestor's allegations as true." Lyon Shipyard, Inc. v. United States, 113 Fed. Cl. 347,

355 n.5 (2013) (quoting <u>McKing Consulting Corp. v. United States</u>, 78 Fed. Cl. 715, 721 (2007)).

"In determining jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." <u>Trusted Integration, Inc. v. United States</u>, 659 F.3d 1159, 1163 (Fed. Cir. 2011). "In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings . . . ." <u>Cedars–Sinai Med. Ctr. v. Watkins</u>, 11 F.3d 1573, 1584 (Fed. Cir. 1993).

"[P]laintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence." <u>Brandt v. United States</u>, 710 F.3d 1369, 1373 (Fed. Cir. 2013).

B.      Motion to Dismiss for Lack of Jurisdiction

Defendant argues that CYIOS lacks standing because it failed to sufficiently allege prejudice in its opening brief, and thus it has waived its prejudice argument.  Def.'s Mot. 12-14.  Defendant further argues that because CYIOS was not "second in the competition," it does not have a substantial chance to receive the contract, a necessary finding for prejudice.  <u>Id.</u> at 14-16.

Plaintiff responds that it did not waive its prejudice argument, that the agency did not rank the unsuccessful offerors, and that it has adequately alleged prejudice.  Pl.'s Resp. 5-7.

The court considers defendant's arguments in turn.

1.      Waiver of Prejudice

In its waiver argument, defendant relies on caselaw supporting the proposition that a party waives an issue not raised in its opening brief, out of fairness to the opposing party who would have no opportunity to respond to an argument offered for the first time in the movant's reply brief.[5]  <u>See</u> Def.'s Mot. 13-14 (citing <u>United States v. Ford Motor</u>

---

[5]      The court notes that defendant unsuccessfully raised the same waiver argument—citing the same legal authority as support—in a previous bid protest.  <u>See</u> <u>CGI Fed. Inc. v. United States</u>, 118 Fed. Cl. 337, 351 (2014), <u>rev'd on other grounds and remanded</u>, 779 F.3d 1346, 1352, 1354 (Fed. Cir. 2015) (finding that CGI Federal had standing and

Co., 463 F.3d 1267, 1276-77 (Fed. Cir. 2006); Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002); Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 800 (Fed. Cir. 1990); Brooks Range Contract Servs., Inc. v. United States, 101 Fed. Cl. 699, 708-11 (2011)). However, the authority defendant has cited does not speak to the circumstance presented in this case.

Neither Ford, Novosteel nor Becton Dickinson address the question of whether a jurisdictional argument, such as standing, would be subject to waiver. Rather, in each of these cases, the Federal Circuit found that the movant waived a merits argument made in its reply brief, but not in its opening brief. See Ford, 463 F.3d at 1276-77 (finding Ford waived a merits argument based on an express written agreement between the parties); Novosteel, 284 F.3d at 1273 (finding Novosteel waived a merits argument based on retroactive imposition of antidumping duties); Becton Dickinson, 922 F.2d at 800 (finding Becton Dickinson waived a patent invalidity argument).

In Brooks Range, this court found that "[b]y failing to raise the issue in its opening brief—here, plaintiff's Motion for judgment on the administrative record—plaintiff has waived its right to assert that it was prejudiced by agency error and may not later attempt to assert this challenge in subsequent briefing or at oral argument." Brooks Range, 101 Fed. Cl. at 709. The Brooks Range case fails to support defendant's waiver argument, however, because it is factually distinguishable from this case. While Brooks Range acknowledged that it made no prejudice argument at all in its opening brief, id., CYIOS has, see Pl.'s Mot. 38-39; see also infra Part II.C.

Defendant presses the argument that subject matter jurisdiction—to include the issue of standing—is subject to the same waiver analysis as a merits argument. But defendant's position is contradicted by binding caselaw. Pointing to guidance from the Supreme Court, the Federal Circuit has stated that "unlike substantive elements of a claim, issues implicating subject matter jurisdiction 'can never be forfeited or waived.'" Ford Motor Co. v. United States, 635 F.3d 550, 556 (Fed. Cir. 2011) (quoting Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006)); see also Lewis v. Casey, 518 U.S. 343, 349 n.1 (1996) (addressing respondents' argument that petitioners had "failed properly to present their 'actual injury' argument below," by finding that "the point relates to standing, which is jurisdictional and not subject to waiver"). Although defendant's motion is silent as to this authority, the court cannot ignore it.

_____

reversing merits decision for the government). Like this court, the CGI Federal court found Novosteel inapposite, and Brooks Range unpersuasive on the question of waiver of standing. Id.

Defendant does not prevail on its challenge to CYIOS' standing on the ground of waiver.

### 2.   Second in the Competition

Defendant alternatively argues that even if the court were to "accept[] as true any allegation that SSB is ineligible to receive the contract award, CYIOS lacks standing to participate in this bid protest because it did not finish second in the competition." Def.'s Mot. 16 (citing United States v. IBM Corp., 892 F.2d 1006, 1011 (Fed. Cir. 1989)). But, defendant's reliance on IBM Corporation is misplaced.

In IBM Corporation, the court found that every bidder, except the successful bidder, offered to supply the government with identical computer equipment; the received bids "materially differ[ed] only as to price." IBM Corp., 892 F.2d at 1010-11. IBM submitted the fourth-lowest bid, made no challenge to the solicitation itself, and offered "no reason to believe that the second-lowest bid [was] not responsive." Id. at 1011. Instead, IBM complained that the successful bidder submitted a nonresponsive bid. Id. at 1008. On those facts, the Federal Circuit found that the second-lowest bidder was the sole interested party, "because only it [stood] to receive the contract in lieu of the challenged awardee." Id. at 1011. The Federal Circuit concluded that as the fourth-lowest bidder, IBM lacked standing. Id.

In this case, the agency did not rank the five unsuccessful offerors. Although in the Source Selection Decision Document, the SSA compared each unsuccessful offeror to SSB, Inc., the awardee, he did not compare the unsuccessful offerors to each other. See Tab 23, AR 1146-49. Defendant's argument that CYIOS was ranked last of the six offerors is merely counsel's interpretation of the Army's assessment of each proposal; the Army made no such ranking.[6] See Def.'s Mot. 15. Unlike the circumstance in IBM Corporation, there is no offeror in this procurement clearly identified as next in line, should plaintiff prevail in its protest and the award to the awardee be set aside.

---

[6]   Defendant incorrectly reported, in its own ranking exercise, that the agency assigned CYIOS a Past Performance confidence rating of Satisfactory Confidence. See Def.'s Mot. 15. In fact, CYIOS received a rating of Substantial Confidence. Tab 18a, AR 1041. Defendant also failed to consider how the ratings would have been affected if plaintiff had prevailed in proving its allegations, as is required when evaluating a protestor's substantial chance for award to determine standing. See Lyon Shipyard, Inc. v. United States, 113 Fed. Cl. 347, 355 n.5 (2013).

Defendant has failed to show on the grounds asserted that CYIOS lacks standing. Accordingly, its motion to dismiss for lack of jurisdiction is **DENIED**.

Although defendant's challenge to standing has failed, standing is not presumed. Thus, the court turns to consider whether plaintiff has shown it has standing in this matter.

C.      Plaintiff's Standing

It is undisputed that CYIOS was an actual offeror.  <u>See, e.g.</u>, Tab 10.  What remains is for CYIOS to show that its chance of securing the award, but for the alleged errors, was not insubstantial.  <u>See Info. Tech.</u>, 316 F.3d at 1319.

CYIOS alleged errors in both the agency's evaluation of its own proposal, and in the evaluation of every other proposal, including that of the awardee, SSB, Inc.  <u>See</u> Pl.'s Mot. 20-38.  CYIOS alleged that:

1. The agency incorrectly evaluated all proposals on Factor 1, Technical/Risk, as the solicitation required the agency to consider nine enumerated criteria, but the agency considered only one of them for each offeror.  <u>Id.</u> at 20-25.
2. The agency incorrectly assessed CYIOS with two significant weaknesses and three weaknesses on Factor 1, Technical/Risk.  <u>Id.</u> at 25-35.
3. The agency erred when it failed to assign CYIOS a significant strength on Factor 1, Technical/Risk, for CYIOS' ability to map its software, xxxxxx,[7] to the Army's stated methodologies.  <u>Id.</u> at 34.
4. The agency erred in its evaluation of all proposals on Factor 2, Past Performance, when the agency rated the past performance of numerous offerors as being "very relevant," because as the incumbent contractor, only CYIOS possessed the experience sufficient for this top rating.  <u>Id.</u> at 35-36.
5. The agency erred in its evaluation of all proposals on Factor 3, Cost/Price, as it failed to comply with the requirement in the Solicitation to conduct a cost realism evaluation.  <u>Id.</u> at 36-38.

It is true that if plaintiff were to prevail on these objections, plaintiff's position would be improved, while SSB, Inc. and all other offerors would find their positions diminished, on at least Factor 2, Past Performance.  But, it is unknown how the other

---

[7]      xxxxxx is CYIOS' proprietary software.

offerors would fare if CYIOS' allegations regarding Factors 1 and Factor 3 were found to be correct.

It is also true that if CYIOS were to prevail in its challenge to the evaluations of both itself and the other five offerors, including the awardee, the agency would have to redo its rating of each offeror, as well as its best value decision. See, e.g., Sci. & Mgmt. Res., Inc. v. United States, 117 Fed. Cl. 54, 61 (2014) (finding that if plaintiff's allegations were "found meritorious, then 'all of the agency's ratings would need to be redone, and a new best value determination made,'" thus plaintiff's allegations satisfy standing) (quoting Preferred Sys. Solutions v. United States, 110 Fed. Cl. 48, 57 (2013); Preferred Sys. Solutions, Inc., 110 Fed. Cl. at 57 (accepting plaintiff's argument that "if the proposals were properly evaluated, [plaintiff's] proposal would receive a much higher rating, such that it would have a reasonable chance of being found to be the best value to the government").

Nevertheless, defendant contends that CYIOS' allegations are insufficient to establish prejudice. Defendant asserts that the "alleged error must have resulted in "particularized harm" to the plaintiff" and that CYIOS has "fail[ed] to address any 'particularized harm' that would confer it standing." Def.'s Mot. 12-13 (citing Labatt Food Serv., Inc. v. United States, 577 F.3d 1375, 1380 (Fed. Cir. 2009)). But the Labatt case defendant has cited does not support its position.

In Labatt, plaintiff complained that early in the bid process, the agency accepted revised proposals from each offeror by e-mail, although the solicitation specified that the transmission was to be by facsimile. See Labatt, 577 F.3d at 1377. In the final stage of bidding, Labatt was late in submitting its final revised proposal, and the agency eliminated it from competition for this reason. Id. at 1378. Labatt then filed its protest, reaching back in time to complain that the entire procurement was "fatally flawed" because the agency accepted proposals submitted by a method other than was specified in the solicitation. Id. The Federal Circuit found that Labatt had "not shown that the government's improper acceptance of e-mails throughout the bid process interfered with its ability to receive the contract award," as the government's mistake "neither helped nor hindered any offeror," and "Labatt's proposal would not have been improved and its chances of securing the contract would not have been increased if [the agency had] cured the e-mail submission error." Id. at 1380-81. The appellate court added: "There is no connection between the government's method of transmission error and Labatt's failure to secure the contract. Without a showing of harm specific to the asserted error, there is no injury to redress, and no standing to sue." Id. at 1381 (emphasis added).

11

Under <u>Labatt</u>, the harm of which plaintiff complains must be particularized to the alleged procurement error.  CYIOS has done this.  CYIOS alleges that the Army's incorrect evaluations resulted in its receiving a lower rating that it should have, and other offerors (including SSB, Inc.) receiving higher ratings than they should have.  CYIOS asserts that these relative ratings harmed its competitive position.  Plaintiff does not have the burden of showing that it would have received the contract.  <u>Data Gen. Corp. v. Johnson</u>, 78 F.3d 1556, 1562 (Fed. Cir. 1996) ("To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract.")

Based on plaintiff's allegations, the court finds that plaintiff's chance of securing the award is not insubstantial, and that CYIOS has standing in this matter.

III.    Cross-Motions for Judgment on the Administrative Record

Plaintiff makes a number of objections to defendant's evaluation of its proposal and the proposals of every other offeror on each factor.  The court considers each objection in turn.

A.    Standard of Review

The Tucker Act grants this court jurisdiction "to render judgment on an action by an interested party objecting to . . . the award of a contract . . . in connection with a procurement."  28 U.S.C. § 1491(b)(1).  The Administrative Procedure Act (APA) standard of review applies to the court's examination of an agency's decision, which means that the court will set aside an agency decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A) (2012).  The court reviews an agency's procurement decision to determine whether the decision is supported by the administrative record.  <u>See</u> RCFC 52.1.  Plaintiff must make its showing by a preponderance of the evidence.  <u>See</u>, <u>e.g.</u>, <u>AmerisourceBergen Drug Corp. v. United States</u>, 60 Fed. Cl. 30, 35 (2004).

The Federal Circuit has said that "[u]nder the APA standard . . . 'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'"  <u>Banknote Corp. of Am., Inc. v. United States</u>, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting <u>Impresa Construzioni Geom. Domenico Garufi v. United States</u>, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

When a challenge is brought on the first ground [lacked a rational basis], the courts have recognized that contracting officers are "entitled to exercise discretion upon a broad range of issues confronting them" in the procurement process.  Accordingly, the test for reviewing courts is to determine whether "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion," and the "disappointed bidder bears a 'heavy burden' of showing that the award decision 'had no rational basis.'"  When a challenge is brought on the second ground, the disappointed bidder must show "a clear and prejudicial violation of applicable statutes or regulations."

Impresa, 238 F.3d at 1332-33 (citations omitted).

"[T]he court will not 'evaluate the proposal anew, but instead will examine the agency's evaluation to ensure that it was reasonable and in accord with the evaluation criteria listed in the solicitation.'"  Pitney Bowes Gov't Solutions, Inc. v. United States, 94 Fed. Cl. 1, 11 (2010) (quoting CCL Serv. Corp. v. United States, 48 Fed. Cl. 113, 120 (2000)).  The court will set aside an agency's decision as arbitrary and capricious if "the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  Ala. Aircraft Indus., Inc. v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (alteration in original) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

The court "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285-86 (1974) (citing Colo. Interstate Gas Co. v. FPC, 324 U.S. 581, 595 (1945)).  The court "may not supply a reasoned basis for the agency's action that the agency itself has not given."  Id. (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

The court's duty is "to determine whether the agency's . . . analysis was consistent with the evaluation criteria set forth in the [solicitation]."  Ala. Aircraft Indus., 586 F.3d at 1375-76.  "It is hornbook law that agencies must evaluate proposals and make awards based on the criteria stated in the solicitation."  Banknote Corp. v. United States, 56 Fed. Cl. 377, 386 (2003), aff'd, 365 F.3d 1345 (Fed. Cir. 2004).  "An agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the solicitation."  FAR 15.305(a) (2014).

13

"[A] contracting agency must treat all offerors equally, evaluating proposals evenhandedly against common requirements and evaluation criteria." <u>Banknote Corp.</u>, 56 Fed. Cl. at 386.

Challenges to technical evaluations deal with the "minutiae of the procurement process . . . which involve discretionary determinations of procurement officials that a court will not second guess." <u>E.W. Bliss Co. v. United States</u>, 77 F.3d 445, 449 (Fed. Cir. 1996). "[A]n offeror's mere disagreement with the agency's judgment concerning the adequacy of the proposal is not sufficient to establish that the agency acted unreasonably." <u>Banknote Corp.</u>, 56 Fed. Cl. at 384 (quoting <u>Carlson Wagonlit Travel</u>, B-287016, 2001 WL 254317, at *2 (Comp. Gen. Mar. 6, 2001)).

"[A]s the contract was to be awarded based on 'best value,' the contracting officer had even greater discretion than if the contract were to have been awarded on the basis of cost alone." <u>Galen Med. Assocs., Inc. v. United States</u>, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (citing <u>E.W. Bliss Co.</u>, 77 F.3d at 449).

Finally, "to prevail in a protest the protester must show not only a significant error in the procurement process, but also that the error prejudiced it." <u>Data Gen. Corp.</u>, 78 F.3d at 1562.

B.    Factor 1 – The Army's Evaluation of Every Proposal on Nine Enumerated Criteria

The Solicitation provides that Factor 1, Technical/Risk Factor, would be evaluated based on the following nine enumerated criteria:  (1) the offeror's core capabilities; (2) technical qualifications; (3) understanding of the Army's human resource systems and single sign on process; (4) innovative approaches to reducing cost and shortening software release cycles; (5) approach to verifying, testing, and validating software; (6) the manner in which schedules and budgets are maintained; (7) the manner in which the Army's legacy system applications are integrated and supported; (8) the manner in which the SLDMS will integrate with the Army's evolving business enterprise architecture and support the Army's human resource information technology strategy; and (9) the extent to which its proposed level of effort and labor categories meets the qualifications and specifications provided by the Army.  Tab 6d, AR 178-79 § M.C.1.c.1-9.

Plaintiff alleges that the Army failed to evaluate all proposals on each of those nine criteria.  Pl.'s Mot. 20-25.  Plaintiff further alleges that only one member of the

14

evaluation team evaluated the Technical/Risk proposals, which plaintiff argues was contrary to the Solicitation.  See Pl.'s Resp. 8-9.  Plaintiff adds that the agency gave the awardee, SSB, Inc., two different Technical/Risk ratings—Outstanding and Good— in two different documents.  Pl.'s Resp. 10.  The court considers each argument in turn.

As the Army specified in the Solicitation, it evaluated each offeror on the Adequacy of Response and Feasibility of Approach for the nine enumerated criteria.  See Tab 6d, AR 178 § M.C.1.  In determining the Adequacy of Response, the agency evaluated each proposal to determine the extent to which each Solicitation requirement was addressed in the proposal.  Id. at AR 178 § M.C.1.a.  As to Feasibility of Approach, the agency evaluated each proposal to determine the extent to which the proposed approach was workable and the end results were achievable.  Id. at AR 178 § M.C.1.b.

CYIOS claims that the Army evaluated each offeror on only one of the nine enumerated criteria, and thus failed to comply with the requirements of the Solicitation.  Pl.'s Mot. 21-25.  In support of its argument, CYIOS pointed to a document described by defendant as "SLDMS Technical Evaluation Form Master Spreadsheet (03 June 2014)" (Master Spreadsheet).[8]  See Tab 20.  According to defendant, the Master Spreadsheet "tracks certain aspects of the Technical/Risk Factor evaluations for all offerors," but it "is not a complete summary of the Technical/Risk Factor evaluations, and does not reflect the substance of all the information documented in the evaluations."  Def.'s Mot. 19.

The court's review of the Master Spreadsheet confirms defendant's characterization.  The Master Spreadsheet is a series of undated, unsigned one-page spreadsheets for each of the fourteen original offerors.  See Tab 20.  The Master Spreadsheet includes the Technical/Risk rating, as well as notes from several technical evaluators regarding how the proposal fared on Adequacy of Response and Feasibility of Approach on one of the nine enumerated criteria, and whether or not the proposal met the requirements for that criterion.  See id.  For example, the page for CYIOS includes only evaluations on level of effort/labor categories (criterion 9), while the page for SSB, Inc. includes only evaluations for its approach to testing, validating and verifying software (criterion 5).  See id. at AR 1086, 1092.

The Master Spreadsheet, however, was not the document the SSA considered in making his procurement decision.  Rather, the SSA considered the "final evaluation results" as presented to him on June 4, 2014 by the SSEB.  See Tab 23, AR 1141 ¶ 7.

_____

[8]     Defendant filed an Index to the Administrative Record, in which it provided brief document names/descriptions and document dates.  ECF No. 12.

Each final Technical/Risk evaluation form was dated either May 29, 2014 or June 3, 2014 and signed by the SSEB chairperson, Megan Farley.  Tab 8, AR 229; Tab 19, AR 1058, 1064, 1068, 1073, 1077, & 1081.  Contrary to plaintiff's assertion, the court's review of the signed final Technical/Risk evaluation form for each offeror shows that the Army evaluated every proposal on each of the nine enumerated criteria, as provided in the Solicitation.  See Tab 19, AR 1054-77 (Nos. 2-4 and 8-9 for each proposal).  While the Master Spreadsheet includes only certain evaluations, the final Technical/Risk evaluation forms reflect the complete evaluations.  Thus plaintiff's argument that the agency failed to conduct a complete evaluation of every proposal on Factor 1 is simply incorrect.

Next, plaintiff points to Ms. Farley's signature on each of the six final Technical/Risk evaluation forms and alleges that only Ms. Farley evaluated the Technical/Risk proposals, as shown by the absence of evaluation forms signed by any other SSEB member.  Plaintiff argues that Ms. Farley's singular evaluation of the proposal contravened the terms of the Solicitation.  See Pl.'s Resp. 8-9.

The SSEB included six members, of whom two were designated as technical evaluators.  Tab 8, AR 229.  As defendant correctly points out, Ms. Farley was the SSEB chairperson, id., who bore responsibility under the Solicitation for "[p]rovid[ing] consolidated evaluation results to the SSA," id. at AR 218 ¶ B.2.a.17.  The documents Ms. Farley signed are the final Technical/Risk evaluation forms and are clearly the "final evaluation results" considered by the SSA.  Compare Tab 23, AR 1141-43, with Tab 19.  The Master Spreadsheet to which plaintiff points, in fact, contradicts plaintiff's assertion that only one technical evaluator considered the proposals—as it contains evaluations for every offeror by multiple technical evaluators, to include Ms. Farley.  See Tab 20.

Finally, plaintiff complains that two separate documents show that the agency gave SSB, Inc. two different ratings for the Technical/Risk Factor.  Pl.'s Resp. 10.  The final Technical/Risk evaluation form for SSB, Inc. lists its rating as Outstanding, Tab 19b, AR 1064, while a document described by defendant in its Index as "GOMO SLDMS Overview Matrix – Cost / Price (09 April 2014)" (Overview Matrix) lists SSB, Inc.'s rating as Good, Tab 17, AR 1039.  While plaintiff's observation is correct, the fact that the agency's final evaluation of SSB, Inc. differed from an evaluation prepared two months earlier is not enough—without more—to support a finding that there was a material error in the procurement process.  Nor does plaintiff, beyond its mere observation, advance such an argument.

Plaintiff has failed to show that the Army did not adhere to the Solicitation's stated evaluation criteria for Factor 1, Technical/Risk Factor, in its evaluation of all proposals.

C.      Factor 1 - Weakness 1

In its objections to weakness number one, plaintiff first challenges the administrative record, and then offers objections to the Army's evaluation of its proposal.

1.      Sufficiency of the Administrative Record

CYIOS asserts that the "Court's resolution of Weakness Number One . . . depend[s] on evidence that is not presently before this Court," and thus the court's "determination of this issue would be premature at this juncture." Pl.'s Resp. 12. Plaintiff makes the same argument for weakness number two. Id. at 13. But plaintiff has not identified what material the Army considered in its procurement decision that is now missing from the administrative record.

The court held a telephonic initial status conference two days after plaintiff filed its complaint, during which defendant described the documents it planned to file in the administrative record. See SC Order 2. Plaintiff offered no objection to the proposed contents of the administrative record. Id.

Defendant filed the administrative record on March 13, 2015, as scheduled. Plaintiff made no objection at that time; nor has plaintiff ever moved to supplement the record. In its opening brief, plaintiff again was silent about any omissions. But, in its response brief, filed two months after the administrative record, plaintiff argues for the first time that the record is missing relevant evidence.

Defendant characterizes plaintiff's challenge to the administrative record as "baseless," and urges the court to "reject it." Def.'s Reply 9.

It is settled law that supplementation of the administrative record "should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (quoting Murakami v. United States, 46 Fed. Cl. 731, 735 (2000), aff'd, 398 F.3d 1342 (Fed. Cir. 2005)). Plaintiff has provided the court with no information to suggest that it would be unable to conduct an effective judicial review on the administrative record before it. The court denies plaintiff's request to delay our consideration of CYIOS' objections to weakness numbers one and two—based on the unspecified, last-minute challenge to the administrative record that plaintiff now makes.

2.      The Army's Evaluation of CYIOS' Proposal for xxxxxxxx and xxxxxx

According to CYIOS, the Army improperly evaluated it as having both a strength and a weakness "on the very same issue." Pl.'s Mot. 26 (citing Tab 19a,[9] AR 1056 ¶¶ 3.4, 4.1).  Plaintiff points to the strength it received for its use of a tool to authenticate certain users signing on to GOMOnet, known as xxxxxxxxxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxxxxxxxx, and the weakness it received for its reliance xxxxxxx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxx, to prevent potentially unsafe user input.  Id.

Defendant maintains that plaintiff's use of xxxxxxxx and xxxxxx are "not the same requirement or issue," Def.'s Mot. 21, and that the "Technical/Risk Evaluation clearly states that these are separate performance work statement requirements," id. at 22. Review of the administrative record supports defendant's position.

In its proposal, CYIOS described xxxxxxxx as a tool to authenticate user credentials for retired general officers, permitting them access to the web application for general officers, GOMONet. See Tab 10a, AR 367 ¶ 3.1.1; see also Tab 6a, AR 148 ("The GOMONET will require retired general officers to log on using user name and password.").  CYIOS also described xxxxxxxx as "a secure, self-service logon credential . . . allowing Beneficiaries affiliated with the Department of Defense (DoD) or Department of Veterans Affairs (VA) access to several websites using a single username and password." Tab 10a, AR 367-68 ¶ 3.1.1 (quoting xxxxxxxxxxxxxxxxxxxxxxxxx). This authentication system will replace over time the Army's current system, Army Knowledge On-Line Single Sign On (AKO SSO). See id. at AR 367 ¶ 3.1.1.

CYIOS identified xxxxxx as a xxxxxxxxx product. See id. at AR 363.  The website for the product describes it as a "xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx." xxxxxx, http://www.xxxxxxxxxxxxxxx (last visited July 30, 2015).

CYIOS organized its proposal to correspond to the PWS so that each proposal paragraph corresponded to a specific PWS requirement.  CYIOS' description of the

---

[9]      In its challenges to Factor 1, Technical/Risk Factor, plaintiff cited to a Powerpoint document the agency used during its post-award debrief meeting with CYIOS.  See, e.g., Pl.'s Mot. 26, 29 (citing Tab 24a) (Debrief document).  It is unclear why CYIOS cited to the Debrief document, rather than to the document on which the SSA relied in making his best value decision, the final Risk/Technical evaluation form, Tab 19a.  The court considers the final Risk/Technical evaluation form, and not the Debrief document.

xxxxxxxxx corresponded to PWS paragraph 3.1 (GOMO/COMO Web Application Support), <u>see</u> Tab 10a, AR 366-68 ¶ 3.1.1, and its description of xxxxxx corresponded to PWS paragraph 3.2 (IT Security Support), <u>see id.</u> at AR 368-70 ¶ 3.2.1.  Thus, within its own proposal, CYIOS recognized that xxxxxxxx and xxxxxx are not the same issue.

CYIOS received a strength for offering not just xxxxxxxx, but also two other user authentication solutions:

> The Offeror's proposal demonstrates both thorough knowledge and practical experience with Army Knowledge Online (AKO) Single Sign-On (SSO) and xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx, which is the proposed Government replacement for the AKO SSO.  The Offeror describes in detail the process of how the xxxxxxxx solution authenticates the user's credentials thereby allowing the user to view their personal information. Additionally the Offeror proposes two other authentication methods, xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx as solutions to the requirement.  <u>The Offeror's ability to suggest various methods to integrate SSO is advantageous to the Government, as it demonstrates skill and knowledge that will minimize the time required to implement a new authentication platform for SLDMS.</u>

Tab 19a, AR 1056 ¶ 3.4 (emphasis added).

The agency's review of CYIOS' proposed use of xxxxxx, however, was more critical:

> The Offeror's proposal states that, "By default, xxxxxx prevents potentially unsafe user input."  The Offeror does not state how xxxxxx prevents potentially unsafe user input or what type of input is considered unsafe.  The Offeror separately addresses Search and Query Language (SQL) injection by, "all queries that are sent to the database are parametrized," but this only covers a subset of unsafe user input.  By not providing an adequate description of what constitutes unsafe user input the Government cannot determine the feasibility of the Offeror's suggested approach, which therefore increases the technical risk that the Offeror will not be able to complete the technical requirements of SLDMS as defined in the PWS.

<u>Id.</u> at AR 1056 ¶ 4.1.

19

Nothing in defendant's evaluation of plaintiff's proposals for xxxxxxxx and xxxxxx suggests these are the "very same issue." Plaintiff's arguments regarding weakness number one do not persuade.

      D.     Factor 1 – Weakness 2 – The Army's Evaluation of CYIOS' Proposal for xxxxxxxxxxxxxxxxxxxxxxxxx

Next, CYIOS objects to the Army's assignment of a weakness for its plan to issue "xxxxxxxxxxxxxxxxxxxxxxxxxxx." Pl.'s Mot. 28-30.

In its evaluation, the Army said that

> [t]he Offeror's proposal states that they intend to do xxxxxxxxxxxxxxxxxxxxxxxxx of xxxxxxxxxxxxxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxx. The Offeror does not explain how xxxxxxxxxxxxxxxxxxxxxxxxxx will provide versioning, management, and control of software assets, nor do they discuss how they intend on ensuring that additional issues are not introduced by updating xxxxxxxxxxxxxxxxxxxxxxxx at a time. This issue increases the technical risk that the Offeror will not be able to complete the requirements of SLDMS as defined in the PWS.

Tab 19a, AR 1056 ¶ 4.2 (emphasis added).

CYIOS first argues that the Army misunderstood its proposal, as it denied any intention "to do xxxxxxxxxxxxxxxxxxxxxxxxxx." Pl.'s Mot. 28-29 (citing Tab 10a, AR 382). But review of CYIOS' proposal shows that, as the Army indicated, CYIOS did highlight its ability to issue xxxxxxxxxxxxxxxxxxxxxxxxx, stating:

> xxxxxx is a holistic, innovative, and transparent tool for managing all program activities.
>
> xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
> xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
> xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
> xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
> xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
> xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx.

Tab 10a, AR 381-82 ¶ 3.7 (emphasis added).

CYIOS further argues that the Army's evaluation was arbitrary and capricious "because a xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx.'" Pl.'s Mot. 29 (citing Tab 19a, AR 1056).

CYIOS adds that the Army was mistaken in finding that CYIOS did not "discuss how they intend on ensuring that additional issues are not introduced by xxxxxxxxxxx xxxxxxxxxxxxxxxxxxxxxxxx." Id. (quoting Tab 19a, AR 1056).

The Army assessed weakness number two to the portion of CYIOS' proposal that corresponded to PWS paragraph 3.7, System Maintenance.  Tab 19a, AR 1056 ¶ 4.2. PWS paragraph 3.7 included the requirement, that "[t]he Contractor shall provide Software Configuration Management services to implement and manage processes that will provide versioning, management and control of software assets (code, resources, and documentation)."  Tab 6a, AR 152 ¶ 3.7.

In paragraph 3.7 of its proposal—the paragraph for which the Army assessed weakness number two—CYIOS did discuss "source control,"[10] Pl.'s Mot. 29, stating that it "uses xxxxxxxxxxx as its source control solution[, and explaining that] xxx provides software versioning and revision control which allows for simple committing, updating, reversion, and merging of solutions."  Tab 10a, AR 380 ¶ 3.7.

But, CYIOS said nothing about how its source control solution—xxxxxxxxxxx— would ensure that its xxxxxxxxxxxxx did not cause problems.  It was the absence of this explanation that caused the Army to assess CYIOS with weakness number two.

Plaintiff characterizes the disagreement between the parties regarding weakness number two as a dispute—about whether there is a "nexus between the operational aspects of xxxxxxxxxxx and the issue of xxxxxxxxxxxxxxxxxxxxxxxxxxx"—that requires a "rather complex factual analysis . . . [not] yet . . . presented to this Court" for resolution. Pl.'s Resp. 12-13.

---

[10]     The terms revision control, version control and source control are synonymous, and refer to the practice of tracking and providing control over changes to source code. https://en.wikipedia.org/wiki/Revision_control (last visited July 30, 2015).

The court considers only whether the Army's findings were reasonable based on the matters before the Army during its evaluation of the offers.  See supra Part III.C.1. Without more, CYIOS' disagreement with the Army is not enough to show agency error. Nor has plaintiff shown that the Army's assessment of weakness number two was either arbitrary or capricious.

E.      Factor 1 – Weakness 3 – The Army's Evaluation of CYIOS' Proposal to Reduce Cost / Shorten Software Release Cycles

In assessing weakness number three, the government provided three criticisms of CYIOS' use of xxxxxx to monitor software releases:

[**First criticism**]The Offeror's proposal provides an explanation of their innovative approach including the use of "xxxxxx's all-in-one approach" to monitor and control all factors affecting a given release; however, the proposal does not address how this would reduce cost or shorten software release cycles. [**Second criticism**] In addition, the process appears to be very tool-dependent and it is not explained or demonstrated if it would work should the tool change for any reason (e.g., the use of JIRA[11] instead of xxxxxx).   [**Third criticism**] There is also no explanation of what would happen to the Government's data should the vendor change at some point in the future.  This approach increases the risk to the Government that the software release cycles will not be shortened or delivered at reduced cost.

Tab 19a, AR 1056-57 ¶ 4.3 (footnote and enumeration added).

CYIOS did not object to the Army's second criticism, but did object to the Army's first and third criticisms.  Regarding the Army's first criticism, CYIOS argues that "xxxxxx does not and never has released software.  Instead, xxxxxx . . .  is a program-wide management tool.  It is not the configuration management tool, nor is it the version control tool . . . ."  Pl.'s Mot. 31 (citing Tab 10a, AR 380).

---

[11]      The Solicitation provided that "[t]he Contractor shall use a requirements management tool; Atlassian JIRA is currently the requirements management tool recommended by the [Software Engineering Center] to document all user and functional requirements, in addition to the ongoing requirements provided for GORMS and the DOM."  Tab 6a, AR 149 ¶ 3.3.

Review of CYIOS' proposal, however shows that it did identify xxxxxx as a version control tool—"We implement the best practice of establishing and maintaining integrity of baseline documents <u>by using version control tools</u> such as xxxxxxxxxx, <u>xxxxxx</u>, and xxxxxxxxxxxxxxxxxxxxxxxxxxxx."  Tab 10a, AR 380 ¶ 3.7 (emphasis added).  CYIOS's argument is thus contradicted by its own proposal.

CYIOS offers further objection to the Army's first criticism that "the proposal does not address how [xxxxxx] would reduce cost or shorten software release cycles." According to CYIOS, the "Army failed to understand" that it uses xxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxx to "speed up release times and cycles."  Pl's Mot. 31.

Defendant responded that

CYIOS did not provide . . . an explanation of how xxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxx is used to speed up release times. . . . The Army could not simply assume that CYIOS understood this requirement unless CYIOS . . . demonstrated that it had an understanding of how this is accomplished.

Def.'s Mot. 24-25.

In the Solicitation, the Army told offerors it would evaluate "[p]roposals . . . to determine . . . Offeror's innovative approaches (e.g. to reduce the software release cycle time . . .) to reduce cost/shorten software release cycles."  Tab 6d, AR 179 § M.C.1c.4.

In its proposal, CYIOS said its "use of xxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxx speeds up release times and cycles tremendously," and that "[t]he use of xxxxxx xxxxxxxx also helps to reduce the complexity, and hence, the cost of software releases. Because xxxxxxxxxxxxxx present a blueprint to solving commonly occurring software problems, their usage can save development time and complexity because of the plethora of documented information for each pattern."  Tab 10a, AR 381-82 ¶ 3.7.

The Army mentioned neither statement in its evaluation.  On its face, the Army's criticism that CYIOS did not address cost reduction or shortened software release cycles is incorrect.  Of course, it may be that the Army found CYIOS' reference to its use of xxxxxxxxxxxxxxxxxxxxxxxxxxxxxx and xxxxxxxxxxxxxx inadequate, as defendant argues in its motion.  But the Army did not say this, and the court may not provide a reasoned explanation for the agency that the agency did not provide for itself.  <u>See</u> <u>Chenery Corp.</u>, 332 U.S. at 196.  Rather, a court may only consider the grounds

23

articulated by the agency in support of its decision.  See Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168-69 (1962).

The court finds that the Army's first criticism is unsupported by the record.

In its third criticism, the Army said that "[t]here is also no explanation of what would happen to the Government's data should the vendor change at some point in the future."  Tab 19a, AR 1056 ¶ 4.3.

CYIOS responds that "xxxxxx does not store this data.  Instead, the Army owns the xxxxxxxxxxxxxxxxxxx tool, and the Army owns xxx and the xxxxxxxxx where the data is stored," thus the Army's concern is misplaced.  See Pl.'s Mot. 31 (citing Tab 6a, AR 142).  Review of the page to which plaintiff cited fails to show any mention of data storage.

The Army responds that CYIOS' contention regarding data storage "contradicts the substance of CYIOS's technical proposal where CYIOS clearly states that xxxxxx stores data that 'enables managers to monitor and control all factors affecting a given release.'"  Def.'s Mot. 25 (quoting Tab 10a, AR 382 ¶ 3.7).  Review of CYIOS' proposal fails to support defendant's assertion—CYIOS did not say that xxxxxx stores data.

In its evaluation, the Army linked this weakness to PWS paragraphs 3.3 and 3.7.  See Tab 19a, AR 1056.  Review of both PWS paragraphs fails to show any direction to offerors to address data storage.  See Tab 6a, AR 148-49 ¶ 3.3, AR 151-52 ¶ 3.7.  PWS paragraph 3.3 addressed database and application maintenance, and while it did not mention data storage, it did provide direction relevant to the Army's third criticism.

The Contract[or] shall maintain data connection with Human Resource Command (HRC) systems; maintain Enterprise Service Bus (ESB) data link from HRC TOPMIS II to SLDMS; reconfigure and update database feeds to incorporate the changes in structure and content due to IPPS-A subsuming various legacy systems; and allow the system [SLDMS] to accept data retrieved from existing personnel systems, such as TOPMIS II,[12] World-wide Individual Augmentee System (WIAS), and IPPS-A (if fielded).

---

[12]     Current Army system of record for Army Officer data.  The system contains base data on assignments and qualifications.  Tab 6a, AR 163.

Id. at AR 149 ¶ 3.3 (emphasis and footnote added).  A plain reading of the Solicitation thus shows that the Army's data is stored within the specified Army personnel systems, and is not in the contractor's possession.

The Solicitation did not require offerors to address data storage in the event of a vendor change.  Considering the Solicitation, CYIOS' proposal and the Army's evaluation, the court is unable to discern why the Army was concerned about this point in the case of CYIOS' proposal.

The court finds that the Army's third criticism is unsupported by the record.

CYIOS made no challenge to the Army's second criticism, thus that criticism stands.  On the whole, however, the court finds that the Army's assessment of weakness number three was not supported by the record.

F.      Factor 1 – Weakness 4 (Significant) – The Army's Evaluation of CYIOS' Labor Categories / Level of Effort

The Army assessed CYIOS with a significant weakness for its proposed labor categories.  Tab 19a, AR 1057 ¶ 4.4.

Criterion number nine of Factor 1 required offerors to provide labor categories and level of effort for their proposals, including the positions they would staff and the number of hours for each position.  Tab 6d, AR 179 § M.C.1.c.9.  Offerors were to attribute each staff position to one or more PWS paragraphs—a practice the Army referred to as "mapping."  Id.

> All labor categories shall be mapped back to the specific PWS paragraph for which they will be responsible to perform.  Offerors are to propose to the Level of Effort specified [by the Government in the Solicitation].  However, Offerors have the flexibility to deviate from the Government's specified Level of Effort for purposes of technical and economic efficiency, provided the Offeror proposes a detailed explanation of how the Offeror's proposed Level of Effort is a more technically and economically efficient means of fulfilling requirements than that specified by the Government.

Id.

For Level of Effort, the Army specified a full-time database administrator (DBA), and mapped its DBA to PWS paragraphs 3.4, 3.6 and 3.7.  Tab 6a, AR 158 App. A. CYIOS, however, proposed only a xxxxxxxx DBA, and mapped the position to PWS paragraphs 3.1-3.5 and 3.7-3.9, allocating the heaviest concentration of time to PWS paragraphs 3.1-3.3.  See Tab 10a, AR 386 ¶ 3.9.2.  CYIOS explained why it chose to deviate from the Army's proposed labor mix:

> CYIOS' proposed a labor mix is slightly different from the Army's Estimated Level of Effort stated in the [the Solicitation]. . . . [W]e only see a need for a xxxxxxxx database administrator (DBA) because there are only 10 servers, three of which being databases.  However, the DBA will contribute in many other ways, as is evidenced by their heavy concentration of estimated hours in PWS 3.1-3.3.  Making up the difference for the DBA, CYIOS will utilize a Security Analyst on a xxx FTE basis.

Id.

> The Army was critical of CYIOS' election to deviate from the proposed labor mix:

> The Offeror proposes a xxx% reduction in the Data Base Administrator (DBA) role as compared to the Government specified level of effort (LOE) in the solicitation.  The solicitation required an explanation of any deviation from the provided level of effort.  The Government expects significant work to begin with the IPPS-A program regarding data structure and interfaces during the base year of this contract.  The Offeror does not sufficiently explain how the reduction in hours for a DBA will be able to sufficiently address this requirement while also performing day-to-day maintenance operations.  The Offeror's proposed level of effort did not demonstrate how the resources can be more technically and economically efficient as compared to the Government's specified LOE.  This will appreciably increase the risk to the Government because the Offeror may not be able to perform all of the data base administrator requirements needed to maintain the SLDMS.  Despite these concerns, the technical evaluators are not recommending any adjustment to hours.

Tab 19a, AR 1057 ¶ 4.4 (emphasis added).

CYIOS received a significant weakness for its failure to explain how its xxxxxxxx DBA could perform the significant work expected on IPPS-A.  The Army erred in making this assessment.

Review of the PWS shows that the Army specified IPPS-A work only in PWS paragraph 3.3,[13] but the Army failed to map its DBA correspondingly.  Instead, the Army mapped its DBA to PWS paragraphs 3.4, 3.6 and 3.7 which say nothing about the IPPS-A program.  See Tab 6a, AR 158 App. A.

Because the Army did not map its DBA to the only PWS paragraph discussing IPPS-A, CYIOS had no reason to explain how its xxxxxxxx DBA could perform the IPPS-A work when it explained its deviation from the Army's proposed level of effort.

The court finds that the Army assessed CYIOS with a significant weakness as to its proposed labor categories in contravention of the requirements provided in the Solicitation.[14]

G.    Factor 1 – Weakness 5 (Significant) – The Army's Evaluation of CYIOS' Continuous Process Improvement Program

CYIOS objects to the significant weakness it received for its proposal to support the Army's continuous process improvement program.  See Pl.'s Mot. 33-35.  As specified in the Solicitation,

The contractor shall support the [the Army's] continuous process improvement program. All processes shall be appropriate to the software

---

[13]    "The Contract[or] shall maintain data connection with Human Resource Command (HRC) systems; maintain Enterprise Service Bus (ESB) data link from HRC TOPMIS II to SLDMS; reconfigure and update database feeds to incorporate the changes in structure and content due to IPPS-A subsuming various legacy systems; and allow the system to accept data retrieved from existing personnel systems, such as TOPMIS II, World-wide Individual Augmentee System (WIAS), and IPPS-A (if fielded)."  Tab 6a, AR 149 ¶ 3.3 (emphasis added).

[14]    CYIOS also argues that the Army failed to adjust the price of CYIOS' proposal in consideration of its xxxxxxxx DBA.  Pl.'s Mot. 32.  This argument is considered with CYIOS' objections to the Army's evaluation of the Cost/Price proposals.  See infra Part III.I.

being sustained or maintained. Processes must be consistent with Government and Industry best practice, and are at a minimum equivalent to CMMI capability Level 3.

. . . The contractor shall provide assistance in improving existing processes that are in place for software and system maintenance.

The Contractor shall provide evidence that their organization supports the process improvement program and have sufficient experience (more than five years of experience) and industry certifications (must be recognized by the Federal Government and Industry) related to process improvement competency (and are at a minimum equivalent to CMMI capability Level 3) prior to contract award.

Tab 6a, AR 152 ¶ 3.8.

Upon evaluating CYIOS' proposal, the Army had two criticisms:

[**First criticism**] The Offeror's proposal responds to PWS section 3.8 Continuous Process Improvement Support by discussing how their tool ensures "total accountability, visibility and control of work activity, by providing the time management automation." However, they do not discuss how the use of this tool will specifically benefit this software development effort and only discuss[] the benefits gained by using the tool at a conceptual level. By depending on a proprietary tool [xxxxxx], rather than demonstrating a thorough understanding of the continuous process improvement, there is serious concern that the Offeror would have difficulty meeting the continuous process improvement requirements should their tool of choice, depending on the reason (such as the application is down), not be available to the Government. [**Second criticism**] The Offeror's proposal also discusses time tracking, time management, and invoices without explaining how these efforts are appropriate for the software being sustained [SLDMS]. The lack of detail and vagueness of the Offeror's proposal regarding continuous process improvement appreciably increases the technical risk to the Government in the areas of schedule and quality.

Tab 19a, AR 1057 ¶ 4.5 (enumeration added).

CYIOS objected to the Army's first criticism, but not the second. As to the first criticism, CYIOS argues that: (1) the Army should "fully understand" certain standards for continual process improvement, such as CMMI[15] (Capability Maturity Model – Integration), ITIL (Information Technology Infrastructure Library), and ISO (International Organization for Standardization); and (2) that that it should have applied its understanding of these standards to CYIOS' proposal. See Pl.'s Mot. 34; see also Pl.'s Reply 15-17. According to CYIOS, it specified "how [its] software is evaluated at CMMI level 3," and that it "even used a consultant that evaluated xxxxxx at above the stated requirements of CMMI and ISO 9001:2008," Pl.'s Mot. 34 (citing Tab 10a, AR 384).

Defendant responds that "[t]he solicitation does not provide that the Army will assume knowledge that an offeror fails to set-forth in its proposal," and that "the information conveyed by CYIOS in its proposal seem[ed] to indicate that CYIOS self-assessed its software at CMMI Level 3, not that its software ha[d] been assessed by an authoritative organization." Def.'s Mot. 28-29.

First, while it is accurate that the Solicitation required offerors to "provide evidence" of "industry certifications . . . related to process improvement competency," Tab 6a, AR 152 ¶ 3.8, nothing in the Army's evaluation suggests that it assessed this significant weakness for CYIOS' failure to provide evidence of the requisite industry certification. Nonetheless, review of CYIOS' proposal confirms defendant's characterization. CYIOS said nothing of possessing industry certifications, or of employing a consultant to evaluate xxxxxx. Rather, its comments about CMMI were mere assertions. See, e.g., Tab 10a, AR 384 ¶ 3.8.1 ("The characteristics of the standard processes run by CYIOS recommend them as CMMI capability level 3.")

Next, CYIOS asserts that in page 22 of its proposal, it "thoroughly state[d] how [xxxxxx's evaluation at a CMMI level 3] specifically benefits the SLDMS according to PWS" paragraph 3.8. Pl.'s Mot. 34 (referencing Tab 10a, AR 384 ¶ 3.8.1). CYIOS further asserts that it offered "many examples that specifically benefit software development effort in section 3.8 [of its proposal] and cited using xxxxxx throughout [its] proposal." Id. (citing Tab 10a, AR 382-85). However, CYIOS included none of these "many examples" in its briefing.

---

[15]    CYIOS refers to both CMMI and ITIL as continual process improvement methodologies, Tab 10a, AR 377 ¶ 3.3.1, and also refers to ITIL as a change management methodology, id.

Review of the cited pages shows a discussion of "standard processes" CYIOS employs that "can be successfully adapted" to many projects.  Tab 10a, AR 384 ¶ 3.8.1.  But, nothing in paragraph 3.8 of CYIOS' proposal supports a finding that it did more than what the Army said it did, simply "discuss[] the benefits gained by using the tool at a conceptual level."  Tab 19a, AR 1057 ¶ 4.5.

Finally, CYIOS objects to its received assessment, contending that the Army should have given it a much better one.  CYIOS argues that because it "directly MAPPED xxxxxx to the Army['s] stated methodologies," it "clearly should have been given a 'Significant Strength' for its innovative and proven software 'xxxxxx.'"  Pl.'s Mot. 34 (citing Tab 10a, AR 384).

As provided in the Solicitation, a strength is "[a]n aspect of an offeror's proposal that has merit or exceeds specified performance or capability requirements in a way that will be advantageous to the Government during contract performance."  Tab 6d, AR 180 § M.C.1 (emphasis added).  Defendant correctly responds that "the solicitation [did] not ask offerors to map their flagship product to applicable ISO standards.  Therefore, [CYIOS'] mapping did not impact the evaluation because it was not a requirement of the solicitation."  Def.'s Mot. 29.

In effect, CYIOS attempts to specify a criterion on which it thinks it should have been evaluated.  As the Army is obligated to evaluate all offerors against the same criteria, this is impermissible.  See, e.g., Lab. Corp. of AmericaHoldings v. United States, 116 Fed. Cl. 643, 650 (2014) ("It is black letter law that agencies must evaluate offerors' proposals based on the evaluation criteria stated in the solicitation."); Banknote Corp., 56 Fed. Cl. at 386 ("[A] contracting agency must treat all offerors equally, evaluating proposals evenhandedly against common requirements and evaluation criteria.").

CYIOS has failed to persuade the court that the Army's assessment of this significant weakness was arbitrary or capricious.

H.      Factor 2 – Past Performance

CYIOS does not challenge its own past performance rating.  But it challenges one aspect of the Army's past performance evaluation—the relevancy rating—for each of the other offerors.  See Pl.'s Mot 35-36.

According to the Solicitation, the Army determined the relevance of an offeror's past performance "to the effort to be acquired through the source selection," by

30

considering "similarity of service/support, complexity, dollar value, contract type, and degree of subcontract/teaming." Tab 6d, AR 181 § M.C.2(i). There were four levels of relevancy—Very Relevant, Relevant, Somewhat Relevant, and Not Relevant. Id. at AR 182.

An offeror's past performance was "Very Relevant" if its "Present/past performance effort involved essentially the same scope and magnitude of effort and complexities [as] this solicitation requires." Id. at AR 182 § M.C.2 (emphasis added). A "Relevant" rating, however, required only that the offeror's present/past performance be "similar," not "essentially the same." Id.

CYIOS complains that the Army evaluated the past performance of all six offerors as being "Very Relevant," when as the incumbent contractor, it was the only offeror with experience performing the contract that was the subject of this procurement. Pl.'s Mot. 36. CYIOS acknowledges that the other offerors may have done "similar" work, thus meriting a "Relevant" rating, but maintains that they could not have done work that was "essentially the same," thus the Army's "Very Relevant" rating was "outside the Solicitation's stated evaluation criteria." Id.

CYIOS points to nothing in the Solicitation to support its position that only experience on this contract could satisfy the requirement for a Very Relevant rating. Nor did CYIOS point to anything in the past performance evaluation of any offeror to suggest that the Army's evaluation failed to comply with the requirements specified in the Solicitation. CYIOS' argument amounts to no more than disagreement with the Army's evaluation, and as such, is insufficient to show that the Army's evaluation was arbitrary or capricious. See Banknote Corp., 56 Fed. Cl. at 384.

CYIOS also argues that the Army failed to properly conduct the past performance evaluations, because only one member of the past performance evaluation team performed the evaluations. See Pl.'s Resp. 18 (citing Tab 18). Review of the past performance evaluations for all six offerors shows that each evaluation was signed by Kelly Doolittle, Past Performance Evaluator. See Tab 18.

While the SSEB included six members, only Ms. Doolittle was assigned to be a past performance evaluator. See Tab 8, AR 229. As Ms. Doolittle was the only past performance evaluator, it is unremarkable that she signed every evaluation.

Plaintiff has failed to show that the Army's evaluation of Factor 2, Past Performance, was arbitrary or capricious for any offeror.

I.      Factor 3 – Cost/Price

For Factor 3, Cost/Price, the Solicitation required the Army to perform a cost realism analysis of each proposal:

> [t]he Government will evaluate the realism of the Offeror's proposed costs for the effort through a cost realism analysis.  To evaluate cost realism, [t]he Government will perform analysis by independently reviewing and evaluating specific elements of the Offeror's proposed Cost/Price Volume to determine whether the proposed Cost is (a) realistic to meet the requirements of this solicitation, and (b) accurately reflects the technical approach contained in Offeror's Technical Approach Factor.  The result of the realism analysis will be a determination of the Probable Cost of performance by the Offeror.  The Probable Cost will be determined by adjusting the Offeror's proposed Cost to reflect any additions or reductions in specific cost elements to realistic levels based on the results of the cost realism analysis.  The Probable Cost may differ from the proposed Cost.

Tab 6d, AR 183 § M.3 (emphasis added).

CYIOS asserts that the Army failed to perform the requisite cost realism analysis for the cost/price proposals of all offerors.  Pl.'s Mot. 37.  Rather, according to CYIOS, the Army "declined to review and evaluate absolutely any of the specific elements of the offeror's proposed cost," and instead determined that "the direct labor cost element, the combined indirect labor cost elements (e.g. fringe, overhead, G&A) and the subcontractor cost element (to a lesser extent) were the only cost drivers of the total proposed effort across all proposals."  Id. (citing Tab 21, AR 1101).

The court's review of the Army's Cost/Price Evaluation for each of the six offerors shows that CYIOS is mistaken in its criticism.

First, the Cost/Price evaluator examined the technical evaluation, to determine if the technical evaluation included an adjustment to the offeror's proposed labor hours or labor mix.  In the case of the six offerors, there were no such recommendations, and the Cost/Price evaluator made no adjustments to the labor hours or labor categories proposed by any offeror.  See Tab 21, AR 1102-06.

The Cost/Price evaluator then compared the hourly rates proposed by CYIOS for

each of seven different labor categories with rates included in the Bureau of Labor Statistics wage survey.  See id. at AR 1103-04.  As none of CYIOS' proposed rates fell below the 25th percentile, the evaluator concluded that "the risk of underbidding is low; therefore, the analyst finds the proposed direct labor rates to be realistic for the purpose of developing the probable cost."  Id. at AR 1104.

The evaluator also analyzed the hourly rates to check for "potentially unrealistic indirect rates."  Id.  CYIOS escalated its hourly rates by xxx% for the option year, which the evaluator found "high, but not unrealistic."  Id.  Finally, the evaluator concluded that the proposed fixed fee percentages for all costs fell "within the statutory limit for this contract type and [are] considered realistic."  Id.  Based on this analysis, the probable cost was evaluated to be the same as the offeror's proposed cost.  Id.  The Army performed a similar cost realism analysis for each of the other five offerors.  See id. at AR 1102-07.

The court finds that the Army's cost realism analysis complies with the requirements in the Solicitation.

CYIOS also attempted to compare each offeror's Technical/Risk rating with its Cost/Price evaluation.  See Pl.'s Mot. 37-38.  For example, CYIOS stated it "passed on all Cost/Price evaluation items but was rated as 'Acceptable'" on the Technical/Risk factor.  Id. at 38.  CYIOS made similar observations for several other offerors.  See id. at 37-38.

CYIOS' purpose in this comparison is unclear.  The Army conducted separate evaluations of each offeror on the Technical/Risk and Price/Cost factors; neither evaluation had any impact on the other.  As stated in the Solicitation Instruction to Offerors, "[n]o pricing information is to be provided in the Technical Proposal."  Tab 6c, AR 171 § L.2.c.(i) (emphasis omitted).

CYIOS also argues that the Army failed to adjust its price "through their price realism evaluation to develop any probable cost," in recognition of the fact that CYIOS proposed a xxxxxxxx DBA, rather than the full-time DBA proposed by the Army.[16] Pl.'s Mot. 32 (citing Tab 19a, AR 1057 ¶ 4.4; Tab 21, AR 1103); Pl.'s Resp. 18.

---

[16]     Defendant states this is a new argument raised in CYIOS' response, thus it is untimely.  Def.'s Reply 9.  Defendant is incorrect; plaintiff did present this argument in its motion, see Pl.'s Mot. 32, for both "Weakness Number Four and Price Factor," Pl.'s Mot. 31-32.

CYIOS prepared its Cost/Price proposal to include a xxxxxxxx DBA, not a full-time DBA.  See Tab 10d, AR 400.  The total price of CYIOS' proposal was $xxx.  Id. at AR 399.  The Army evaluated CYIOS' Cost/Price proposal as submitted by CYIOS, finding that the probable cost of CYIOS' proposal was the same as its proposed cost, $xxx.  See Tab 21, AR 1104.  As CYIOS' Cost/Price proposal already included only the cost of a xxxxxxxx DBA, the Army had no reason to adjust the probable cost of its proposal.

CYIOS has failed to show that the Army's evaluation of Factor 3 Cost/Price was either arbitrary or capricious for any offeror.

J.     Prejudice

"[T]o prevail in a protest the protester must show not only a significant error in the procurement process, but also that the error prejudiced it."  Data Gen. Corp., 78 F.3d at 1562.  The Federal Circuit has instructed that to establish prejudice, a protestor must show that there was a "substantial chance" it would have received the contract award, but for the agency's errors.  Bannum, Inc. v. United States, 404 F.3d 1346, 1353 (Fed. Cir. 2005).

As provided in the Solicitation, the Technical/Risk factor is "significantly more important than Past Performance.  Past Performance is more important than the Cost/Price factor.  All evaluation factors other than Cost/Price, when combined, are significantly more important than the Cost/Price factor."  Tab 6d, AR 178.  The Army awarded the contract on a best value basis, and cautioned offerors that it would not necessarily award the contract to the lowest cost offeror.  Id.

Although CYIOS' position improved as a result of this protest, there is no basis for finding that CYIOS was prejudiced by the agency's errors.  CYIOS prevailed in its objection to weakness number three and weakness (significant) number four.  Thus where it had five weaknesses, it now has three weaknesses, and one of them is a significant weakness.

The tally of strengths and weaknesses for both SSB, Inc. and CYIOS is provided below.

| SSB, Inc. and CYIOS Evaluations<br>After CYIOS' Successful Protest of Two Weaknesses | | |
|---|---|---|
| | **SSB, Inc. (Awardee)** | **CYIOS (Protestor)** |
| Significant Strengths | 2 | 2 |
| Strengths | 11 | 2 |
| Significant Weaknesses | 0 | 1 |
| Weaknesses | 1 | 2 |
| Deficiencies | 0 | 0 |
| Past Performance Rating | Very Relevant;<br>Substantial Confidence | Very Relevant;<br>Substantial Confidence |
| Cost | $xxx | $xxx |

Tabs 18a-b, 19a-b, 21.

SSB, Inc. leads CYIOS with thirteen strengths to CYIOS' four strengths.  While CYIOS still has three weaknesses, SSB, Inc. has only one.  Past Performance is a draw, as both offerors earned the top performance rating—Very Relevant/Substantial Confidence.  CYIOS' proposal was more costly than SSB, Inc.'s, coming in at a 23 percent premium.  While the Army would make its selection on best value, without necessarily choosing the lowest cost offeror, no best value tradeoff would be necessary in a head-to-head competition between CYIOS and SSB, Inc.

SSB, Inc. clearly prevails on both the most important factor, Technical/Risk, and on Cost.  CYIOS did not prevail on any factor.  Accordingly, the court finds that CYIOS has failed to show that it was prejudiced by the Army's errors.

The court **DENIES** plaintiff's motion for judgment on the administrative record, and **GRANTS** defendant's cross-motion for judgment on the administrative record.

IV.     Conclusion

For the foregoing reasons, defendant's motion to dismiss for lack of jurisdiction is **DENIED**.  While CYIOS has shown some error in the agency's procurement process, it has failed to show that it was prejudiced by those errors.  CYIOS' motion for judgment on the administrative record is **DENIED**, defendant's cross-motion for judgment on the administrative record is **GRANTED**.  The Clerk of Court shall enter judgment accordingly.  No costs.

IT IS SO ORDERED.

s/ Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Chief Judge

36