# In the United States Court of Federal Claims

No. 15-148C
(E-Filed Under Seal: October 26, 2015)
(Reissued: November 23, 2015)[1]

|  |  |
|---|---|
| CYIOS CORPORATION, | ) |
|  | ) |
|  | ) Motion for Reconsideration; Post- |
| Plaintiff, | ) Award Bid Protest; RCFC |
|  | ) 59(a)(1)(B); RCFC 60(b)(6) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

<u>Frank V. Reilly</u>, Fort Lauderdale, Fla., for plaintiff.

<u>Delisa M. Sánchez</u>, Trial Attorney, with whom were <u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General; <u>Robert E. Kirschman, Jr.</u>, Director; and <u>Deborah A. Bynum</u>, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

---

[1]       This Opinion was originally filed under seal to protect potentially proprietary or confidential information subject to the Protective Order, at which time the parties were provided an opportunity to request redactions of any protected information.  On November 9, 2015, each party provided its proposed redactions.  ECF Nos. 30, 31.  On November 12, 2015, the court provided notice that it accepted defendant's proposed redactions in their entirety, and accepted some of plaintiff's proposed redactions, but rejected others as not falling within the scope of the protective order.  ECF No. 32.  The court offered plaintiff until November 20, 2015 to defend its proposed redactions.  Plaintiff filed no response.

        Redacted text is indicated as follows, xxx, with the redaction approximately equal in length to the text redacted, with two exceptions.  Redacted numbers, for example dollar amounts or percentages, are indicated as xxx, regardless of the number of digits in the redacted number, and redacted names of companies are indicated as xxxxxx, regardless of the length of the company name.

## OPINION AND ORDER

This is a motion for reconsideration of the court's decision dismissing plaintiff's post-award bid protest. CYIOS Corporation was the incumbent contractor, and an unsuccessful offeror (CYIOS or plaintiff). The procuring agency is the United States Army Software Engineering Center Enterprise Solutions Directorate Data Services Division (agency, the Army or defendant).

In resolving the bid protest, the court found that two weaknesses the Army assigned to CYIOS' technical proposal were unsupported by the record. Nonetheless, the court found that despite the elimination of the two weaknesses, CYIOS did not have a substantial chance to receive the contract; thus it was not prejudiced by the Army's errors. The court denied CYIOS' motion for judgment on the administrative record, and granted defendant's cross-motion.

CYIOS argues that the court erred in several respects in its decision, principally, in its finding that CYIOS was not prejudiced by the Army's errors. CYIOS contends otherwise. According to CYIOS, under a particular scenario it sets forth in its motion, it would have prevailed over the awardee on the most important factor, Factor 1 Technical/Risk, and thereby demonstrated a substantial chance of receiving the contract. CYIOS seeks a remand of its proposal to the Army for reevaluation in light of the court's decision eliminating two weaknesses.

The court did not request responsive briefing from defendant.[2] Plaintiff's motion is ripe for decision. For the reasons fully discussed below, plaintiff's motion for reconsideration is **DENIED**.

I.      Background

The court set out detailed facts relating to the solicitation and the cross-motions for judgment on the administrative record in its earlier decision. CYIOS Corp. v. United States, 122 Fed. Cl. 726, 731-33 (2015). Only those facts necessary to address the issues plaintiff raises on reconsideration will be discussed here.

      A.      Procurement, Plaintiff's Motion for Judgment on the Administrative
                Record, and the Court's Decision

---

[2]      Defendant may file a response to a motion brought under Rule 59 only at the court's request. RCFC 59(f).

Plaintiff filed its motion for judgment on the administrative record on April 9, 2015.  Pl.'s Mot. JAR, ECF No. 15.  On July 31, 2015, the court issued a sealed opinion denying plaintiff's motion for judgment on the administrative record, and granting defendant's cross-motion for judgment on the administrative record.  ECF No. 20.  Judgment entered that same day.  ECF No. 21.  On August 21, 2015, the court issued the public version of its opinion.  CYIOS Corp., 122 Fed. Cl. 726.

In evaluating proposals, the Army considered three factors:

1.  FACTOR 1 – TECHNICAL/RISK FACTOR: The Technical/Risk factor will include the evaluation of the offeror's response to the proposal requirements identified in the RFP as they relate to the PWS . . . .

2. FACTOR 2 [–] PAST PERFORMANCE: Each offeror's past performance will be reviewed to determine relevancy and confidence assessment.

3.  FACTOR 3 [–] COST/PRICE:  The resulting award will be a Cost Plus Fixed-Fee Term Contract.  Cost realism will be utilized in the evaluation of this cost reimbursable effort.

Tab 6d, AR 178 § M.B.  Further, the Solicitation provided that

[t]he Technical factor is significantly more important than Past Performance. Past Performance is more important than the Cost/Price factor.  All evaluation factors other than Cost/Price, when combined, are significantly more important than the Cost/Price factor. . . . Offerors are cautioned that the award may not necessarily be made to the lowest cost offeror.

Id. § M.A.

In evaluating Factor 1 Technical/Risk, the Army assessed each technical proposal with one of five adjectival ratings, Outstanding, Good, Acceptable, Marginal, or Unacceptable.  Id. at AR 180.  On June 20, 2014, the Source Selection Authority awarded the contract to SSB, Inc. (SSB or awardee).  Tab 23, AR 1141 ¶ 7.

In evaluating CYIOS' Factor 1 Technical /Risk proposal, the Army assessed CYIOS with five weaknesses, two of them significant weaknesses.  Tab 19a, AR 1056-57.  In its motion for judgment on the administrative record, CYIOS challenged each

weakness.  Pl.'s Mot. JAR 20-35.  The court eliminated two of those weaknesses (one of which was a significant weakness), finding that they were unsupported by the record. CYIOS Corp., 122 Fed. Cl. at 742-44 (Weakness 3); id. at 744-45 (Weakness 4).

Both CYIOS and SSB earned the top rating on Factor 2 Past Performance, Very Relevant/Substantial Confidence.  Tab 23, AR 1140.  As CYIOS and SSB received the same rating, the Past Performance ratings received no weight in the court's prejudice analysis.

In its Factor 3 Cost/Price proposal, the offeror calculated its proposed cost, to include the cost of its direct labor, fringe benefits, labor overhead, and various indirect rates and fees.  See, e.g., Tab 10d, AR 399 (CYIOS total price).  The Army conducted a cost realism analysis, in which it examined whether the offeror's proposed cost was "(a) realistic to meet the requirements of this solicitation, and (b) accurately reflect[ive] [of] the technical approach contained in Offeror's Technical Approach Factor."  Tab 6d, AR 183.  The Army told offerors that it would determine the probable cost of their proposals "by adjusting the Offeror's proposed Cost to reflect any additions or reductions in specific cost elements to realistic levels based on the results of the cost realism analysis. The Probable Cost may differ from the proposed Cost."  Id.  In making its contract selection, the Army considered the probable cost of each proposal, not the proposed cost. See id.

B.      Plaintiff's Motion for Reconsideration

On August 28, 2015, plaintiff filed its motion for reconsideration under Rules 59(a)(1)(B) and 60(b)(6).  Pl.'s Mot. 1, ECF No. 26.  Along with its motion, CYIOS filed an affidavit from its Chief Executive Officer (CEO), Timothy W. Carnahan.  Carnahan Aff., ECF No. 26-1.

According to plaintiff, "the court's determination that the Awardee still leads CYIOS as to the [Factor 1] Technical/Risk Factor and the [Factor 3] Cost Factor and that no best value tradeoff would be necessary is clearly not supported by the record and is in fact erroneous."  Pl.'s Mot. 16.  Plaintiff asks this court to reverse the judgment dismissing its protest, and to remand the matter to the Army for reevaluation of CYIOS' proposal.  See id. at 24-25.

Regarding Factor 1, plaintiff argues that although the court did find that two weaknesses were unsupported by the record, it failed to consider whether it should have instead received a strength or significant strength, instead of each erroneous weakness.

Id. at 17.  Plaintiff also complains that the court failed to consider whether it should have received a new adjectival rating, after the elimination of the two weaknesses.  Id. at 3, 19.

CYIOS did not request reconsideration of the court's decision on Factor 2 Past Performance.

Regarding Factor 3 Cost/Price, CYIOS argues that the court failed to consider the impact of the two eliminated weaknesses on its probable cost.  Id. at 23-24.  CYIOS argues that the elimination of two weaknesses led to the elimination of certain labor hours in its proposed labor mix, which meant a reduction in the price on which it should have been evaluated.  Id. at 23.  As evaluated by the Army, the probable costs of CYIOS' and SSB's proposals were $ xxx and $ xxx, respectively, thus SSB had the advantage over CYIOS by an amount of $ xxx.  Tab 23, AR 1148.  According to CYIOS' calculations, after the elimination of the total cost of certain labor hours, its probable cost would be $ xxx, Pl.'s Mot. 23, or approximately $ xxx less than SSB's probable cost.

On the basis of its own revised cost proposal, CYIOS concludes that "CYIOS prevails on FACTOR 3, not the Awardee SSB."  Id. at 24.  In CYIOS' view, this further militates in favor of the court remanding its proposal back to the Army for reevaluation.  See id. at 23.

Regarding prejudice, CYIOS asserts that the court erred in its finding that it did not have a substantial chance of receiving the contract and thus was not prejudiced by the Army's errors.  Id. at 16-23.  CYIOS provides what it termed a "hypothetical scenario," under which it prevails over SSB on Factor 1 Technical/Risk, the most important factor, to show that it did have a substantial chance of receiving the contract.  Having shown prejudice in this speculative circumstance, CYIOS seeks a remand of its proposal for further evaluation by the Army.

CYIOS also claims it was surprised that in determining prejudice, the court compared the evaluation results of its proposal with those of SSB.  Id. at 7-8.  CYIOS complains that because it had no notice the court would make such a comparison, it had no opportunity to speak to a direct comparison with SSB, and it was "faultless" in not addressing such a comparison.  According to CYIOS, this lack of notice amounts to a constitutional due process violation.  Id.

On September 25, 2015, CYIOS filed a notice of appeal of the court's July 31, 2015 decision.  ECF No. 27.  On September 28, 2015, the United States Court of Appeals for the Federal Circuit issued an order deactivating plaintiff's appeal, as its motion for reconsideration had tolled the time for filing an appeal under Fed. R. App. P. 4(a)(4).

Order, ECF No. 28.  Plaintiff's appeal will resume upon this court's entry of its order on plaintiff's motion for reconsideration.  Id.

II.    Legal Standard

CYIOS brought its motion for reconsideration under both Rules 59(a)(1)(B) and 60(b)(6) of the Rules of the United States Court of Federal Claims (RCFC).  Pl.'s Mot. 1.

A.    Rule 59(a)(1)(B)

Rule 59 provides that "[t]he court may, on motion, grant . . . a motion for reconsideration on all or some of the issues—and to any party—as follows: . . . for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."  RCFC 59(a)(1)(B).  The Federal Circuit has described the circumstances that support a motion for reconsideration.

> Rule 59 . . . permits reconsideration for one of three reasons: (1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice. . . . "Generally, a motion under Rule 59 must be based upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court."

Parsons ex rel. Linmar Prop. Mgmt. Tr. v. United States, 174 F. App'x 561, 563 (Fed. Cir. 2006) (emphasis added) (quoting Weaver–Bailey Contractors, Inc. v. United States, 20 Cl. Ct. 158 (1990) (denying Rule 59 motion for reconsideration of entry of judgment dismissing complaint)).

The term "'[m]anifest' is understood as 'clearly apparent or obvious.'"  Martin v. United States, 103 Fed. Cl. 445, 448 (2012) (quoting Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002)).  "'Manifest injustice' thus refers to injustice that is apparent to the point of almost being indisputable."  Martin, 103 Fed. Cl. at 448 (quoting Pac. Gas & Elec. Co. v. United States, 74 Fed. Cl. 779, 785 (2006)).

"The decision whether to grant reconsideration lies largely within the discretion of the [trial] court."  Yuba Nat. Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990).  In seeking Rule 59(a) reconsideration, "the movant must point to a manifest error of law or mistake of fact" and must do more than "merely reassert[ ] arguments which were previously made and were carefully considered by the court."  Bannum, Inc. v. United States, 59 Fed. Cl. 241, 243 (2003) (quoting Henderson Cty. Drainage Dist. No. 3

v. United States, 55 Fed. Cl. 334, 337 (2003)).  "[M]otions for reconsideration should not be entertained upon 'the sole ground that one side or the other is dissatisfied with the conclusions reached by the court, otherwise the losing party would generally, if not always, try his case a second time, and litigation would be unnecessarily prolonged.'" Fru-Con Const. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999) (quoting Seldovia Native Ass'n v. United States, 36 Fed. Cl. 593, 594 (1996)).

"[A]n argument made for the first time in a motion for reconsideration comes too late, and is ordinarily deemed waived and not preserved for appeal."  Bluebonnet Sav. Bank, F.S.B. v. United States, 466 F.3d 1349, 1361 (Fed. Cir. 2006) (citing, inter alia, Lamle v. Mattel, Inc., 394 F.3d 1355, 1359 n.1 (Fed. Cir. 2005); Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004)).

B.     Rule 60(b)(6)

Rule 60(b)(6) provides that the court "may relieve a party . . . from a final judgment [or] order . . . for . . . any . . . reason that justifies relief."  RCFC 60(b)(6).

The Supreme Court has stated that Rule 60(b)(6) "should only be applied in 'extraordinary circumstances.'" Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864 (1988).  "A movant is entitled to relief under Rule 60(b)(6)—the 'catch-all' provision—if 'such action is appropriate to accomplish justice' and only in 'extraordinary circumstances.'" Liljeberg, 486 U.S. at 863-64 (quoting Klapprott v. United States, 335 U.S. 601, 614-15 (1949); Ackermann v. United States, 340 U.S. 193 (1950)); see also Mendez v. United States, 600 F. App'x 731, 733 (Fed. Cir. 2015) ("[Rule 60(b)(6)] is only available in extraordinary circumstances."); Info. Sys. & Networks Corp. v. United States, 994 F.2d 792, 795 (Fed. Cir. 1993) ("[S]ubsection (6) [of Rule 60(b)] requires a showing of 'extraordinary circumstances.'" (quoting Ackermann, 340 U.S. at 202)).

"Such extraordinary circumstances exist if a person can demonstrate that he was not at fault for his predicament."  Mendez, 600 F. App'x at 733; see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 393 (1993) ("To justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay.").

Examples of extraordinary circumstances include: (1) the conduct of proceedings without the knowledge of the losing party; (2) unusual combinations of health and financial difficulties; or (3) gross negligence or severe misconduct by counsel.  See Infiniti Info. Sols., LLC v. United States, 93 Fed. Cl. 699, 705 n.11 (2010) (collecting cases); see also Charles Alan Wright et al., 11 Federal Practice & Procedure § 2864,

7

Westlaw (database updated Apr. 2015) (providing examples of "extraordinary circumstances" to include "[f]raud by the party's own counsel, by a codefendant, or by a third-party witness").

A court's legal error, however, will not suffice to show "extraordinary circumstances" under Rule 60(b)(6). Brown v. United States, 80 F. App'x 676, 679 (Fed. Cir. 2003) ("Even if the court did misconstrue the claims raised by [plaintiff] in his complaint, such a legal error would not constitute . . . extraordinary circumstances . . . ."); see also Reitz v. United States, 37 Fed. Cl. 330, 333 (1997) (citing cases stating that legal error is insufficient to show the extraordinary circumstances contemplated by Rule 60(b)(6)).

III.    Discussion

Although plaintiff brought its motion for reconsideration under both Rules 59(a)(1)(B) and 60(b)(6), it failed to provide legal support for consideration of its motion under either rule.

Regarding Rule 60(b)(6), while CYIOS correctly stated that the movant must show a "valid reason that justifies affording the relief, usually broadly described as 'extraordinary circumstances,'" Pl.'s Mot. 5-6 (citing Fiskars, Inc. v. Hunt Mfg. Co., 279 F.3d 1378, 1382 (Fed. Cir. 2002)), CYIOS made no allegation of any "extraordinary circumstances." Rather, CYIOS argued only that it was "faultless" for not comparing its proposal and SSB's proposal, as the court did in its prejudice analysis. See id. at 5-7.

> [T]he Protestor respectfully submits that it was faultless in not addressing the issue of a hypothetical head to head competition previously. This is because the issue was not raised by the parties or by this court prior to the issuance of this court's Opinion and Order. . . . In this case, CYIOS was not provided with any opportunity to be heard on the issue of a hypothetical head to head competition prior to the entry of this court Opinion and Order.

Id. at 7-8. It seems that in making an assertion that it was "faultless," CYIOS attempts to bring itself within reach of the case law instructing that a movant must be faultless to avail itself of the extraordinary circumstances provision under Rule 60(b)(6). See id. at 6 (citing, inter alia, Pioneer Inv. Servs. Co., 507 U.S. at 393 ("To justify relief under [Rule 60(b)(6)], a party must show 'extraordinary circumstances' suggesting that the party is faultless . . . .")).

Standing alone, however, an assertion that the movant was faultless does not support a Rule 60(b)(6) motion for relief.  Although CYIOS has made no claim of any extraordinary circumstances, the court nonetheless considers whether any of the allegations CYIOS made in its motion could be considered extraordinary circumstances.

CYIOS alleges it was surprised that the court would compare the evaluation results of its proposal with those of SSB, and it asserts that the court erred in several respects in reaching its decision.  But, CYIOS provides no authority to suggest that a claim of surprise would qualify as an "extraordinary circumstance."  Nor could it, as a review of the court's case law shows that "surprise" is not among the "extraordinary circumstances" that have been found sufficient to merit relief under Rule 60(b)(6).  See supra Part II.B.  Nor does a claim of legal error qualify as an extraordinary circumstance under Rule 60(b)(6).  See supra Part II.B.

CYIOS has failed to allege any circumstance that would satisfy a showing of "extraordinary circumstance" under Rule 60(b)(6).  Accordingly, it has failed to support a Rule 60(b)(6) motion for relief from judgment.[3]

CYIOS also brings its motion under Rule 59(a)(1)(B).  Pl.'s Mot. 1.  CYIOS, however, has made no allegation of either an intervening change in law or that previously available evidence is now available.  Therefore, to prevail on its Rule 59(a)(1)(B) motion for reconsideration, CYIOS must show that reconsideration is necessary to "prevent manifest injustice."  See Parsons, 174 F. App'x at 563.  While CYIOS did not assert "manifest injustice" occurred in this case, the court considers, for the sake of completeness, whether CYIOS has shown manifest injustice that compels relief under Rule 59(a)(1)(B).

---

[3]     Nor could CYIOS have brought its motion under Rule 60(b)(1), which provides the possibility of relief from a final judgment for "mistake, inadvertence, surprise, or excusable neglect."  RCFC 60(b)(1).  Judicial error may be alleged under Rule 60(b)(1), but only "when inadvertence is shown."  Patton v. Sec'y of Dep't of Health & Human Servs., 25 F.3d 1021, 1030 (Fed. Cir. 1994); see also Brown v. United States, 80 F. App'x 676, 678 (Fed. Cir. 2003) (finding that an erroneous application of law, if present, would be an explicit error—not an inadvertent one—and thus would fail to support an effort to obtain relief under Rule 60(b)(1)).  Because CYIOS's allegations are of judicial error, not inadvertence, its allegations do not—and cannot—support a Rule 60(b)(1) motion for relief.

A.      Factor 1 Technical/Risk

CYIOS complains that while the court eliminated two weaknesses, "it failed to evaluate whether those erroneous weaknesses should have been treated as Strengths or Significant Strengths[, thereby] . . . erroneously depriv[ing] [it] of the opportunity to gain at least two additional strengths, at least one of which was significant."  Pl.'s Mot. 17.

In seeking reconsideration, CYIOS makes no assertion that it offered this argument—specifically that it should have received strengths instead of the received weaknesses—in its motion for judgment on the administrative record.  Nor could it do so, as a review of CYIOS' motion for judgment on the administrative record shows that in challenging each of the eliminated weaknesses (in particular Weaknesses 3 and 4), CYIOS said nothing about receiving a strength instead.  See Pl.'s Mot. JAR 30-31 (Weakness 3), 31-33 (Weakness 4).  The court notes that CYIOS did argue that it should have received a significant strength in place of Weakness 5, but the court considered and rejected that argument.  See id. at 34-35 (Weakness 5); CYIOS Corp., 122 Fed. Cl. at 747.

Having failed to make this argument in its motion for judgment on the administrative record, CYIOS cannot make it on reconsideration.  See Bluebonnet Sav. Bank, 466 F.3d at 1361 ("[A]n argument made for the first time in a motion for reconsideration comes too late, and is ordinarily deemed waived and not preserved for appeal.").

The court finds no error in its Factor 1 decision.

B.      Factor 3 Cost/Price

CYIOS faults the court for failing to consider the impact of the two eliminated weaknesses on its probable cost.  Pl.'s Mot. 23-24.  According to CYIOS' CEO, Mr. Carnahan, certain labor hours should not be included in "CYIOS's pricing for the purposes of a best value determination," because "the government does not intend to pay" for the costs associated with these labor hours.  Carnahan Aff. ¶ 8.  As explained by Mr. Carnahan in his affidavit,

CYIOS's proposal contains certain divergences[4] from the government's model which were designed to increase the best value to the government, but were erroneously deemed to be weaknesses. Since these are no longer weaknesses, the Army is free to accept or reject these divergences at its discretion for the purposes of obtaining best value for the government.

Id. ¶ 6. And as CYIOS argued in its motion,

the Army's cost [realism] analysis was based on certain weakness determinations that this court has now invalidated. Each of these items directly relate to CYIOS's proposed cost. Since CYIOS's technical evaluation has now been modified by this court as it relates to CYIOS's technical approach, the original cost analysis performed by the Army is no longer realistic and does not accurately reflect the newly revised technical approach.

When factoring the cost impact of this court's decision back into CYIOS's proposal, CYIOS's evaluated cost[5] (excluding all optional items) is $ xxx.

Pl.'s Mot. 23 (citing Carnahan Aff. ¶ 9). In effect, CYIOS argues that if the Army had not assessed it the two eliminated weaknesses, the Army would have made changes to CYIOS' proposed labor hours for certain positions, resulting in the reduction in its probable cost that CYIOS now argues it is due.

In its motion for judgment on the administrative record, CYIOS challenged each of the five weaknesses the Army assessed its technical proposal. See Pl.'s Mot. JAR 20-

---

[4]     The government included in the solicitation an estimated level of effort (LOE). Tab 6a, AR 158 app. A. The LOE was the government's suggested level of staffing for the contract, which included a proposed list of positions and the number of hours recommended for each position. Tab 6a, AR 158 app. A. The divergences to which Mr. Carnahan refers are the differences between CYIOS' proposed labor mix in its technical proposal, Tab 10a, AR 386, and the government's estimated LOE in the solicitation, Tab 6a, AR 158 app. A. CYIOS differed from the government in the number of hours it proposed for the positions of program manager, web developer, and database administrator. See Tab 10a, AR 386 ¶ 3.9.2.

[5]     Evaluated cost is synonymous with probable cost.

35. CYIOS makes no assertion that it offered this argument—that the elimination of any, or all, of the five weaknesses would affect its probable cost—in its motion for judgment on the administrative record, and review of that motion shows that CYIOS made no such argument. See id. at 36-38 (Factor 3 Cost/Price arguments). Thus, any such argument offered in its motion for reconsideration comes too late. See Bluebonnet Sav. Bank, F.S.B., 466 F.3d at 1361.

This aspect of CYIOS' arguments for reconsideration reflects a misapprehension of the circumstances under which the Army's cost evaluator would have adjusted an offeror's proposed cost during the cost realism analysis. In performing the cost realism analysis, the cost evaluator reviewed the previously completed technical evaluation to determine whether the technical evaluators recommended any change in the proposed labor mix or labor hours. See Tab 21, AR 1103. In reviewing CYIOS' technical evaluation, the cost evaluator said that the "3 June 2014 technical evaluation [of CYIOS' technical proposal] reflects no recommended adjustments to the labor hours or labor mix; therefore, no adjustments were made to labor hours or categories," during the cost realism analysis. Id.

Accordingly, before the cost evaluator could have deducted the cost of any labor hours from CYIOS' proposal, the technical evaluators first would have had to recommend the elimination of those labor hours during their evaluation of CYIOS' technical proposal. If the Army did not intend to pay for certain labor hours, as Mr. Carnahan now contends, the Army's technical evaluators would have recommended an adjustment to the labor hours during their evaluation. Although the technical evaluators did assess CYIOS with a significant weakness for its proposed labor mix and labor hours, Weakness 4, they did not recommend any adjustment in the labor hours proposed by CYIOS. See Tab 19a, AR 1057 ¶ 4.4. Because the technical evaluators made no such recommendation when they assessed CYIOS with a significant weakness for its labor mix, Weakness 4, and with five weaknesses overall, CYIOS' argument that the technical evaluators would have done so if CYIOS had a better evaluation—that is after the elimination of the two weaknesses, including Weakness 4—seems to miss the mark.[6]

---

[6]   The court notes that in CYIOS' motion for judgment on the administrative record, it faulted the cost evaluator for not reducing its proposed cost for a different reason. Pl.'s Mot. JAR 32. As stated in the court's sealed opinion, "CYIOS also argues that the Army failed to adjust its price 'through their price realism evaluation to develop any probable cost," in recognition of the fact that CYIOS proposed a xxxxxxxx [database administrator (DBA)], rather than the full-time DBA proposed by the Army." Opinion 33, ECF No. 20, July 31, 2015 (internal footnote and fact citations omitted). The court considered this argument and found it unpersuasive: "As CYIOS' Cost/Price proposal already included

Regardless, CYIOS' argument on Factor 3 Cost/Price is foreclosed as it has come too late. The court finds no error in its Factor 3 decision.

C.      Prejudice

CYIOS contends that the court erred in finding that it was not prejudiced by the Army's errors. Pl.'s Mot. 16-23. CYIOS first makes a constitutional due process argument, claiming that the court did not provide notice that it would directly compare CYIOS' proposal with SSB's proposal in determining prejudice. Id. at 7-8.

CYIOS also faults the court for: (1) failing to determine whether it was entitled to a new adjectival rating for its technical proposal, given the elimination of two of its weaknesses, id. at 19-23; and (2) finding that SSB continued to prevail over CYIOS on Factor 1, which CYIOS alleges is based on a misapplication of Bannum, Inc. v. United States, 404 F.3d 1346 (Fed. Cir. 2005), id. at 16-19.

1.      The Court's Failure to Provide Notice of Its Intention to Compare the Offerors' Proposals

CYIOS claims that it did not expect that the court would compare CYIOS' evaluation results with those of SSB in determining prejudice. Id. at 7-8. According to CYIOS, it "was not provided with any opportunity to be heard on the issue of a hypothetical head to head competition prior to the entry of this court['s] Opinion and Order." Id. at 8. CYIOS asserts it was surprised by the court's comparison because "the issue was not raised by the parties or by this court prior to the issuance of this court's Opinion and Order." Id. at 7.

CYIOS' claim of surprise is a disingenuous one. The prejudice analysis, which requires a determination of whether the protestor had a substantial chance to receive the contract, necessarily involves a comparison of the protestor's evaluation results with those of the awardee. See, e.g., Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1563 (Fed. Cir. 1996) (finding no substantial chance that the protestor would have received the contract but for the alleged error, because "[the protestor's] price was still substantially higher than [the awardee's]").

---

only the cost of a xxxxxxxx DBA, the Army had no reason to adjust the probable cost of its proposal." Id. at 34.

CYIOS must have realized this, because in its motion for judgment on the administrative record, it relied, inter alia, on Electronic Data Systems, LLC v. United States in arguing that it was prejudiced by the Army's errors.  Pl.'s Mot. JAR 38-39 (citing Elec. Data Sys., LLC v. United States, 93 Fed. Cl. 416, 435-36 (2010)).  In evaluating prejudice, the court in Electronic Data Systems directly compared the protestor's evaluation results with those of the awardee on the one factor on which there was a meaningful difference between the two offerors.  Elec. Data Sys., LLC, 93 Fed. Cl. at 435-36 ("The difficulty for plaintiff in this regard is the sheer size of the differential between its price and that of [the awardee]—in raw terms, slightly more than $50 million, representing nearly a 29 percent spread.")).  The court credits plaintiff with familiarity with the authority on which it relied in its own briefing.

Moreover, the Army conducted a best value tradeoff [7] by discussing the strengths and weaknesses of SSB's proposal as individually compared with each of the other five offerors.  Tab 23, AR 1146-49.  The Source Selection Authority compared CYIOS' proposal with SSB's on each of the three factors, concluding that "[SSB] has a stronger Technical proposal than [CYIOS] (Acceptable [adjectival rating]) and the cost premium for [CYIOS] of $ xxx is not justified given the lower technical rating.  [CYIOS] does not represent the best value as compared to [SSB]."  Id. at AR 1148.

CYIOS' argument that it had no notice, and thus no opportunity to speak, as to any comparison with SSB's proposal cannot stand.

2.      The Court's Failure to Assign CYIOS a New Factor 1 Technical/Risk Adjectival Rating

CYIOS faults the court for not deciding the adjectival rating—Acceptable, Good, or Outstanding—to which CYIOS was entitled, after the court eliminated two of its weaknesses.  See Pl.'s Mot. 3, 19.  According to CYIOS, it was necessary for the court to determine a new adjectival rating to decide whether CYIOS had a substantial chance of receiving the contract.  See id. at 19.

The real issue to be addressed is what CYIOS's new rating should be.  In order for this court's [prejudice] analysis to be correct, it needs to know

---

[7]     The Army conducted a best value tradeoff as the offeror with the highest technical rating, SSB, was not the lowest cost offeror.  See Tab 23, AR 1140 (listing ratings and costs); Tab 6d, AR 180 ("Trade-off Process is the process which permits trade-offs among cost or price and non-cost factors and allows the Government to accept other than the lowest priced proposal.").

exactly what the threshold requirement is for obtaining an OUTSTANDING rating on the FACTOR 1 – TECHNICAL/RISK FACTOR.  Without any such facts, this court has no factual basis upon which to make the determination that the Awardee [SSB] would prevail in a hypothetical head to head competition with CYIOS as to FACTOR 1.

Id.

Notably, CYIOS points to no authority to support is position that in evaluating prejudice, the court first must determine whether CYIOS was entitled to a new technical/risk adjectival rating.  Nor could it, as the only issue in assessing prejudice in this case was whether CYIOS would have had a substantial chance to receive the contract, but for the two eliminated weaknesses.  Data Gen. Corp., 78 F.3d at 1562 ("[T]o prevail in a protest the protester must show not only a significant error in the procurement process, but also that the error prejudiced it.").

Not only was it unnecessary for the court to consider whether CYIOS was entitled to a new technical/risk rating, it would have been inappropriate for the court to assign such a rating.  Assigning technical/risk ratings is the prerogative of the Army technical evaluators, not the court.  See, e.g, Banknote Corp. of Am. Inc. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (stating that the court's bid protest jurisdiction is limited to determining whether the agency's "decision lacked a rational basis; or . . . the procurement procedure involved a violation of regulation or procedure").

Without determining whether CYIOS was entitled to a new Factor 1 technical/risk adjectival rating, the court discerns no error in its finding that CYIOS was not prejudiced by the Army's errors.

3.      The Court's Finding that CYIOS was Not Prejudiced by the Army's Errors

CYIOS maintains that the court's prejudice analysis was "fatally flawed" as it showed how CYIOS could have prevailed over SSB on Factor 1, which was the most important factor in the evaluation, and thereby showed that CYIOS had a substantial chance to receive the contract.  Pl.'s Mot. 17-19.  CYIOS adds that because "the facts present in Bannum [] that were used by the court . . . [to make] its decision are nowhere to be found in this case," the court erred in this case by relying on Bannum in its prejudice analysis.  See id. at 16-17.

a.      The Court's Reliance on Bannum, Inc. v. United States

CYIOS challenges the court's reliance on Bannum, Inc. v. United States for what constitutes prejudice in a post-award bid protest.  Pl.'s Mot. 16-17; see also CYIOS Corp., 122 Fed. Cl. at 749 (citing Bannum, Inc., 404 F.3d at 1353).

CYIOS does not argue that the court applied the incorrect legal standard—that is, CYIOS does not argue that substantial chance is the wrong determinant of prejudice in a post-award bid protest.  Instead, CYIOS argues that its "case is clearly distinguishable" from Bannum.  In Bannum, the agency assessed the offeror's proposals by awarding points for five factors; for example, the agency awarded up to 400 points for past performance, and up to 250 points for the technical factor.  Pl.'s Mot. 17; see also Bannum, Inc., 404 F.3d at 1348.  CYIOS asserts that the difference in this case is that "the Technical/Risk Factors were never point scored.  Furthermore, the court in this case, unlike in Bannum, did not have the benefit of an independent point score review (or any other review) from the GAO proceedings."  Pl.'s Mot. 17.

CYIOS' argument is unconvincing.  The court relied on Bannum for the Federal Circuit's holding:  "[T]o establish prejudice, a protestor must show that there was a 'substantial chance' it would have received the contract award, but for the agency's errors."  CYIOS Corp., 122 Fed. Cl. at 749 (quoting Bannum, Inc., 404 F.3d at 1353).  The Federal Circuit's holding in Bannum was not limited to its facts.  This court regularly relies on Bannum for this legal standard, and has done so in a number of cases in which the agency has evaluated technical proposals not by the point system employed in Bannum, but in the same manner that the Army did here.  See A-T Sols., Inc. v. United States, 122 Fed. Cl. 170, 174, 179 (2015) (stating that an Outstanding adjectival rating required the evaluators to find that the "[p]roposal meets requirements and indicates an exceptional approach and understanding of the requirements.  Strengths far outweigh any weaknesses.  Risk of unsuccessful performance is very low."); Supreme Foodservice GmbH v. United States, 112 Fed. Cl. 402, 407, 412 (2013) (same); Westech Int'l, Inc. v. United States, 79 Fed. Cl. 272, 278, 284 (2007) (same).

CYIOS itself also relied on Bannum for this legal standard in its motion for judgment on the administrative record.  See Pl.'s Mot. JAR 38 ("To demonstrate prejudice, a protester must show that, absent the error in the procurement process, there was a substantial chance it would have received the contract award." (citing Bannum, Inc, 404 F.3d at 1353)).

The court finds no error in its reliance on Bannum, Inc. v. United States for the legal standard as to prejudice in a post-award bid protest.

      b.     The Court's Finding that SSB Prevailed on Factor 1 Technical /Risk

According to CYIOS, the court erred in finding that CYIOS was not prejudiced by the Army's errors. "[T]he court's determination that the Awardee still leads CYIOS as to the Technical/Risk Factor [1] and the Cost Factor and that no best value tradeoff would be necessary is clearly not supported by the record and is in fact erroneous." Pl.'s Mot. 16. CYIOS argues that it could have prevailed over SSB on Factor 1, and would have had a substantial chance to receive the contract—thereby establishing prejudice. See id. at 16-19.

Before evaluating CYIOS' argument, the court turns to review the method employed by the Army in assigning Factor 1 adjectival ratings. In Section M of the solicitation, the Army explained that it assigned each Factor 1 adjectival rating based on two assessments: its weighing of the number of strengths and weaknesses awarded by the technical evaluators, and its risk assessment of the offeror's proposal. Tab 6d, AR 180. The Army's explanation is set forth below in its entirety.

| [Factor 1] Technical/Risk Assessment Ratings | |
|---|---|
| **Adjectival Rating** | **Definition** |
| Outstanding | Proposal meets requirements and indicates an exceptional approach and understanding of the requirements. Strengths far outweigh any weaknesses. Risk of unsuccessful performance is very low. |
| Good | Proposal meets requirements and indicates a thorough approach and understanding of the requirements. Proposal contains strengths which outweigh any weaknesses. Risk of unsuccessful performance is low. |
| Acceptable | Proposal meets requirements and indicates an adequate approach and understanding of the requirements. Strengths and weaknesses are offsetting or will have little or no impact on contract performance. Risk of unsuccessful performance is no worse than moderate. |
| Marginal | Proposal does not clearly meet requirements and has not demonstrated an adequate approach and understanding of the requirements. The proposal has one or more weaknesses which are not offset by strengths. Risk of unsuccessful contract performance is high. |
| Unacceptable | Proposal does not meet requirements, contains one or more deficiencies, and is unawardable. |

17

Id. (emphasis added).  Thus a Factor 1 Outstanding adjectival rating required the Army to find that an offeror's "strengths far outweigh[ed] any weaknesses."[8]

SSB had two significant strengths, eleven strengths, one weakness, and no significant weaknesses, and the Army awarded SSB an adjectival rating of Outstanding. Tab 23, AR 1141.  Prior to the court's review, CYIOS had two significant strengths, two strengths, three weaknesses, and two significant weaknesses, and the Army awarded CYIOS an adjectival rating of Acceptable.  Id. at AR 1142.

After the court's review, in which it eliminated two weaknesses, one of them a significant weakness, CYIOS then had two significant strengths, two strengths, two weaknesses, and one significant weakness.  CYIOS Corp., 122 Fed. Cl. at 749-50.  With these evaluation results, CYIOS argues it could have received an Outstanding adjectival rating, the same adjectival rating SSB received.  See Pl.'s Mot. 20.  Given an Outstanding adjectival rating, CYIOS argues it would have had a substantial chance to receive the contract, thus it was prejudiced by the Army's errors.  See id.  Having demonstrated prejudice, CYIOS argues the court's finding to the contrary was in error.  See id.

In making this claim, however, CYIOS offers no argument that its strengths far outweigh its weaknesses.  Rather, to support its position that it could have received an Outstanding adjectival rating, CYIOS proposed a series of three "hypothetical" scenarios describing an alternative proposal evaluation system in which the Army awarded a varying number of points for each strength and weakness.  Id. at 17-19.  In Scenario 1, CYIOS proposed 1 point for each significant strength or strength, with a deduction of 1 point for each weakness or significant weakness.  Id. at 18.  In Scenario 2, CYIOS altered the number of points, now proposing 50 points for each significant strength and 10 points for each strength, with deductions of 10 points for each weakness and 15 points for each significant weakness.  Id.  Finally, in Scenario 3, CYIOS proposed awarding 1,500 points for each significant strength and 100 points for each strength, with deductions of 100 points for each weakness and 150 points for each significant weakness.  Id. at 18-19.

---

[8]       An Outstanding adjectival rating also required the Army to find that the risk of unsuccessful performance is very low.  Tab 6d, AR 180.  As provided in the solicitation, the technical risk ratings, in order from best to worst, were very low, low, moderate, and high.  See Tab 6d, AR 180-81.  The Army assessed CYIOS' technical risk as moderate. Tab 19a, AR 1058.  CYIOS made no argument as to how it could receive an Outstanding adjectival rating when its technical risk rating was lower than that required by the Army for an Outstanding rating.  CYIOS did not challenge its technical risk rating in its motion for judgment on the administrative record.

According to CYIOS, it is under Scenario 3 that it would prevail over SSB.

[T]his court's [prejudice] analysis [in its July 31, 2015 decision] . . . appears to be correct at first glance, but only until Scenario 3 comes into play. . . . [T]he Protestor respectfully submits that this court's prejudice analysis is fatally flawed.  This is because, under Scenario 3, CYIOS clearly prevails, not SSB.

Id. at 19.  Scenario 3 is included below in its entirety.

HYPOTHETICAL SCENARIO 3

SSB has 2 significant strengths worth 1,500 points ea. which equals 3,000 points.
SSB has 11 strengths worth 100 points each which equals 1,100 points.
SSB has 1 weakness worth -100 points.
Therefore, SSB has 4,000 points.

CYIOS has 2 signif. strengths worth 1,500 points ea. which equals 3,000 points.
CYIOS has 2 strengths worth 100 points each which equals 200 points.
CYIOS has 2 signif. weaknesses (- 150 points each) which equals -300 points.
CYIOS has 1 weakness worth -100 points.
Therefore, CYIOS has 2,800 points.
RESULT: SSB has 1,200 more points.

MODIFIED RESULT
(ADDING [ONE] STRENGTH[] [AND ONE SIGNIFICANT STRENGTH])[9]: **CYIOS has 400 more points.**

---

[9]      In its motion, CYIOS labeled Scenario 3 as adding two strengths.  It is clear from both the text and its numerical tally, however, that CYIOS intended to hypothesize adding one strength (100 points) and one significant strength (1,500 points), for an additional 1,600 points.  CYIOS originally had 2,800 points, plus the now added 1,600 points, would give it a total of 4,400 points, or a "modified result" of 400 points more than SSB's total of 4,000 points.

Id. at 18-19.

CYIOS pointed to nothing in the record that supported the idea that the Army would evaluate technical proposals according to CYIOS' hypothetical scenarios. Nor could it provide such record support, as its hypothetical scenarios are at variance with the solicitation.[10] As the Army explained, it awarded adjectival ratings by comparing the number of strengths to the number of weaknesses, and determining whether strengths "far outweigh[ed] any weaknesses" (for an Outstanding adjectival rating), whether strengths "outweigh[ed] any weaknesses" (for a Good adjectival rating), or whether strengths and weaknesses were offsetting (for an Acceptable adjectival rating). Tab 6d, AR 180.

Contrary to CYIOS' argument, the record suggests that an offeror with CYIOS' modified evaluation results would not have received an Outstanding adjectival rating. The Factor 1 evaluation results for each of the six offerors evaluated by the Army are provided below.

| Factor 1 Technical/Risk Evaluation Results (xxxxxxxxxxxxxxxxx) | | | | |
|---|---|---|---|---|
| | Adjectival Rating | Number of Strengths | Number of Weaknesses | Risk Assessment |
| xxxxxx | Acceptable | 3 | 4 | Moderate |
| xxxxxx | Acceptable | 2 | 3 | Moderate |
| CYIOS Corp. (Army's original evaluation) | Acceptable | 4 | 5 | Moderate |
| CYIOS Corp. (Court's modified evaluation) | Not evaluated | 4 | 3 | Moderate |
| xxxxxx | Good | 7 | 1 | Low |
| xxxxxx | Good | 5 | 3 | Low |
| SSB, Inc. | Outstanding | 13 | 1 | Very low |

Tab 23, AR 1141-43.

In comparing CYIOS' modified evaluation results with those of the other five offerors, the number of CYIOS' strengths and weaknesses is most like that of xxxxxx, which had five strengths and three weaknesses, as compared to CYIOS' four strengths

---

[10]   CYIOS' hypothetical scenarios invoke the point system of evaluation employed in Bannum, a system that CYIOS itself contends was not used by the Army in its evaluation of proposals in this matter. See supra Part III.C.3.a.

and three weaknesses.  See id. at AR 1142-43.  With these evaluation results, the Army awarded xxxxxx an adjectival rating of Good.  Id. at AR 1143.  In arguing that its evaluation results could have earned an Outstanding adjectival rating, CYIOS said nothing about how this was possible, when an offeror with better evaluation results earned the lesser adjectival rating of Good.

The court finds no error in its finding that CYIOS was not prejudiced by the Army's errors.

IV.    Conclusion

The arguments CYIOS makes regarding the court's alleged errors regarding Factor 1 Technical/Risk and Factor 3 Cost/Price are new arguments—CYIOS offered neither argument in its briefing on its motion for judgment on the administrative record.  For this reason, neither argument may support a motion for reconsideration.  See Bluebonnet Sav. Bank, F.S.B., 466 F.3d at 1361.  Having fully considered all CYIOS' arguments, the court finds no error in its finding that CYIOS did not have a substantial chance to receive the contract, and thus was not prejudiced by the Army's errors.

As the court finds no errors in its decision, CYIOS has failed to show that it will suffer manifest injustice, but for its motion for reconsideration.

The court notes that as the incumbent contractor, CYIOS' disappointment that it lost this contract is understandable.  But CYIOS' motion for reconsideration is not.  Although CYIOS brought its motion under both Rules 59(a)(1)(B) and 60(b)(6), it failed to assert circumstances that, on their face, would justify relief under either rule.  Rather, CYIOS relied solely on an allegation that it was "faultless" in not anticipating a comparison of its proposal with the awardee's proposal to support this motion.

In its criticism of the court's decision on Factors 1 and 3, CYIOS made new arguments.  CYIOS ignored settled case law that prohibits this court from considering such arguments on reconsideration.

CYIOS asserted that the court erred in its prejudice analysis, without providing any record support for its contention that it could have received an Outstanding adjectival rating on Factor 1.  In making this argument, CYIOS disregarded the Army's proposal evaluation method that was clearly described in the solicitation.  CYIOS chose instead to rely on a "hypothetical scenario" to support its contention.

CYIOS' motion is wanting for either legal or fact support.  Accordingly, plaintiff's motion for reconsideration is **DENIED**.

IT IS SO ORDERED.

s/ Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Chief Judge